**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

………………………………………………….
*In re*                                                                   :
IRISH BANK RESOLUTION CORPORATION   :       Chapter 15
(LIMITED)(IN SPECIAL LIQUIDATION)              :
                                                                          :       Case No. 13-12159 (CSS)
         Debtor in a foreign proceeding          :       **Hearing Date: 9/20/2013 at 2pm**
……………………………………………......... :       **Objection Deadline 9/18/2013[1]**
                                                                                  **RE: Docket Nos. 1, 3, 6, 7, 34, 35, 41**

**OBJECTION BY CASTLEWAY PROPERTIES, LLC AND WALNUT-RITTENHOUSE ASSOCIATES, L.P. TO THE VERIFIED PETITION FOR RECOGNITION UNDER CHAPTER 15 AND PROPOSED ORDER (THE "RECOGNITION PETITION" AND "PROPOSED ORDER") SUBMITTED BY <u>IRISH BANK RESOLUTION CORPORATION LIMITED ("IBRC")</u>**

Castleway Properties, LLC ("Castleway") and Walnut-Rittenhouse Associates, L.P. ("Walnut"), sometimes collectively referred to as the "Borrowers," by their undersigned counsel, join the Objections to the Recognition Petition submitted by John Flynn, Sr., et al (the "Flynn Objection") for the reasons stated therein, and also join in those portions of the Objections submitted by Burlington Alpha LLC and Burlington Beta LLC (the "Noteholders' Objection") that address how the "proceedings" in Ireland are not cognizable "foreign proceedings." In addition, the Borrowers submit certain additional grounds in opposition as follows:

*General Background and Standing*

1.      Castleway and Walnut are an affiliated Pennsylvania limited liability company and Pennsylvania limited partnership that own real estate in Pennsylvania consisting of an office-industrial park near the Philadelphia airport (Castleway) and valuable ground adjoining Rittenhouse Square in downtown Philadelphia (Walnut).

---

[1] Counsel for Petitioner agreed to an extension of the original 9/13/2013 deadline until noon on 9/18/2013. The parties are working toward clarifying the relationship between IBRC and Borrowers, which clarification may limit the scope of this Objection.

1

2. These properties were mortgaged in 2006 and 2007 to Anglo-Irish Bank Corporation plc. ("AIB-plc"). They were cross-collateralized to AIB-plc, securing acquisition and development loans (the "Loans") in excess of $60 million.

3. The loan papers were made by the Boston and Pennsylvania offices of lender and borrower and were drawn up in the United States (as were various amendments), by United States counsel based in Philadelphia and Boston. The loan documents are governed by choice-of-law clauses choosing Massachusetts law, as to most matters, and Pennsylvania law as to some matters of enforcement and property rights. The loan documents consent to jurisdiction of the courts in Massachusetts and Pennsylvania. The owners of Castleway and Walnut are Irish citizens.

4. AIB-plc was nationalized by the Irish government, and its stock re-registered as AIB-ltd., with share ownership held by the Irish Finance Minister.

5. The Walnut Loan matured on October 31, 2009. The Castleway Loan matured October 31, 2011.

6. The Loan agreements prohibit transfers of the loans without Borrowers' consent, particularly if the transferee is not an "eligible assignee" as a commercial bank with assets in excess of $1 billion.

7. Despite these prohibitions, and without seeking or obtaining Borrowers' consent, IBRC, the National Asset Management Agency ("NAMA") and their counsel have sent various notices and correspondence to Borrowers that the loans made by AIB-plc were now owned, controlled and directed by varying combinations of IBRC and NAMA. [2]

---

[2] In November, 2009, the Irish government established NAMA under the National Asset Management Agency Act of 2009 (the "NAMA Act"). The NAMA Act contemplates that the Agency will cause the management, collection and disposition of assets of various banks, including AIB-plc and AIB-limited. Section 91 of the NAMA Act envisages NAMA's acquiring "foreign bank assets," being assets where a foreign law governs their transfer.

8. More recently, the borrowers received a notice dated August 7, 2013 that purports, in apparent violation of the loan's anti-assignment provisions, to declare NAMA to be the loan owner and a new entity called "Capita Asset Services (Ireland)" to be the loan servicer. A copy is attached as Exhibit "A."

8. Borrowers have asked IBRC counsel in this action to confirm IBRC's position on who owns and directs these loans.

9. Pending and subject to clarifications from IBRC, this Objection is based, at least in part, on the assumption that IBRC may contend that it has rights to the loans and therefore may contend that they are property of the estate under 11 U.S.C. § 541 or under Chapter 15 or under any applicable stay.

10. Since the maturity of the Loans, the Borrowers have been working hard to refinance or purchase the Loans from the lender.

---

Section 91(3)(b) of the NAMA act provides that "(b) if the relevant foreign law does not permit the transfer or assignment of the foreign bank asset, the participating institution shall if NAMA so directs do all that the participating institution is permitted to do under that law to assign to NAMA the greatest interest possible in the foreign bank asset. Where the foreign law does not permit the transfer (as here), § 91(4) provides that the assets remain held by the "participating institution" but "(a) are subject to duties, obligations and liabilities as nearly as possible corresponding to those of a trustee in relation to that bank asset, and (b) shall hold the bank asset for the benefit and to the direction of NAMA, in each case subject to the nature of, and the terms and conditions of the acquisition of, the foreign bank asset." This suggests that as of 2009, the status of the loans was that AIB-Ltd. held legal title to the loans in trust for NAMA.

IBRC was created after the Irish government merged AIB-Ltd, successor by government nationalization to AIB-plc, with another nationalized bank, the Irish Nationwide Building Society ("INBS") under the Credit Institutions (Stabilisation) Act 2010. Recognition Petition ¶¶ 1, 8. That Act contained similar language to the NAMA act about holding assets in trust if foreign law prohibited assignment. Borrowers did have correspondence and communications, some of which sought but did not obtain Borrowers' consent for the loans to be held by IBRC in trust for NAMA and to permit further transfers.

As noted in the text of this Objection, IBRC sent an August 7, 2013 letter to Borrowers that the Loans had become the property of NAMA, and that IBRC's role as "servicer" had been assigned to Capita Asset Management. Borrowers consent was neither sought nor obtained for that transfer.

It is unclear from the Recognition Petition whether or not the IBRC contends that the Loans are held by IBRC, whether as trustee or owner or otherwise. IBRC counsel has stated to the undersigned counsel that he believes that the Loans were in fact transferred to NAMA and that IBRC no longer is either owner or servicer of the Loans. Clarification of these matters is in the works from him and may affect the scope of this Objection.

11. Unfortunately, however, IBRC/NAMA have unreasonably refused all of Borrowers' proposals, even though they were for more than IBRC/NAMA's own appraised values and even though the payment amounts were only a few cents on the dollar less than IBRC/NAMA's calculation of the full debt.

12. IBRC/NAMA have also unreasonably hindered the payoff or buyout of the loans by insisting that the two cross-collateralized loans for Castleway and Walnut be paid off at the same time, regardless of the amount of the payoffs. They are unrelated properties, in different jurisdictions and of different types, attracting different investors and borrowers.

13. In addition, since mid-August 2013, the Borrowers have been seeking and, despite repeated requests, unable to obtain a current payoff letter from IBRC/NAMA.[3]

14. IBRC/NAMA is in the midst of an appraisal and sale program for the loans under which the lender has stated that its valuation criteria are for a fair market discounted basis of 4.50%, less 2.32% from that amount.

15. Borrowers are confident that, if they had a current payoff that included these discounts, they could pay off the loans in question within 30 days.

16. Borrowers are very actively structuring transactions now to implement this result. However, these transactions and structures will fail if not implemented promptly, or stayed by these proceedings.

17. The borrowers submit that none of this would have happened, and that the loans would have been long ago either repaid or purchased, had the lender been a commercial bank as required by the loan agreements.

---

[3] Borrowers have paid all invoiced interest charges currently. In the summer of 2013, the lender stopped invoicing, which was about the same time as the notice letter attached as Exhibit "A." No proof has ever been provided as yet to Borrowers that these transfers actually took place, were documented or authorized.

18.     The Castleway and Walnut loan agreements require the borrowers consent if the loans are to be managed or owned by any entity other than an ongoing commercial bank with assets in excess of $1 billion.   NAMA would not have qualified as a "commercial bank" transferee under the loan agreement, particularly in view of § 216 of the NAMA Act (headed "NAMA etc. not to be taken to be carrying on a banking business").   The Recognition Petition states that IRBC is not a licensed bank, was never authorized to engage in new loans or to take deposits, and has rather "been granted permission by the Central Bank to carry out certain banking operations that are appropriate to an orderly winding up of a credit institution."  Petition for Recognition §§ 10, 19.

19.     IRBC's Recognition Petition admits, without naming the loans involved, that its assets in the United States are loans that prohibit lender's assignment without the borrowers' consent,  and as to which IRBC was unable to obtain the borrowers' consent.  ¶Petition for Recognition 17.

20.     A proposal to transfer the loan assets by auction sale to third parties (or failing that to NAMA) is specifically set out in the Recognition Petition at §§ 21-23; see also Wallace Declaration ¶ 41.   Therefore it appears that these bankruptcy filings by IRBC appear to have a central aim of forcing further transfer(s) of these loans (and any other loans with similar provisions) against Borrowers' rights.

21.     Based upon the foregoing, and subject to the results of any efforts to untangle the question of current ownership of the loans, Castleway and Walnut submit that they are (i) creditors of Petitioner IRBC for damages caused by unauthorized transfers and lender misconduct (ii) claimants against IRBC as to purported present and future loan enforcement

rights, and (iii) stakeholders with standing as parties affected by the outcome of these proceedings.

### *Objection IRBC's Petition for Recognition before this Court*

22. As noted above, Castleway and Walnut join in the Objections stated in the Flynn Objections and to the reasoning set out as to "foreign proceedings" and their inadequacy in the Noteholders Objection.

23. As to venue, Castleway and Walnut note that the nexus to Delaware is not spelled out in the Recognition Petition. Castleway and Walnut have no connection with the state of Delaware.

24. Neither IRBC's Chapter 15 Bankruptcy Petition (the "Bankruptcy Petition") nor IRBC's Recognition Petition provide any list of assets held or basis to assess its apparent contention that 70% of applicable assets and liabilities are in Ireland and not in the United States.

25. Under the *sui generis* web of particularized legislation and enactments relating to IBRC and its assets in Ireland, the Minister of Finance directs matters, displaces essential court review otherwise available in Irish liquidations, and *simultaneously owns the debtor,* having nationalized and acquired its stock for the government of Ireland.[4] Castleway submits that this combination of control, ownership and non-review cannot qualify as a "foreign proceeding" under Chapter 15 and that recognition of this process of nationalization as if it were a qualified foreign liquidation proceeding is manifestly contrary to public policy under 11 U.S.C. § 1506.

---

[4] The Irish government nationalized AIB-plc in January, 2009, under the Anglo Irish Bank Corporation Act, 2009 ("Anglo-Irish Bank Act"). Petition for Recognition, ¶7. Under §§5 and 6 of that Act, the Minister for Finance of Ireland was declared the owner of all stock and AIB-plc was then deemed re-registered as a single-member limited company to be known as Anglo Irish Bank Corporation Limited ("AIB-ltd"). IBRC "is wholly owned by the Finance Minister in his official capacity on behalf of the Irish government." Traynor Declaration on behalf of IBRC at ¶8 ("Traynor Declaration"). The Finance Minister is the sole shareholder of IBRC. *Id.* Wallace Declaration ¶ 57

26.     Borrowers further contend that IRBC, NAMA, and the Minister of Finance, under the web of Irish enactments comprise "instrumentalities" of government and therefore should not be viewed as a "person" or a "debtor" eligible for consideration of Chapter 15 status under 11 U.S.C. §§ 101(24), 109(b) and 1515. *See In re Northern Mariana Islands Retirement Fund,* 2012 U.S. Dist. Lexis 131709 (Bankruptcy Judge, DMI) (Commonwealth influence over fund makes it an ineligible governmental instrumentality); *cf. In re Nortel Networks, Inc.,* 669 F. 3d 128, 138 (3rd Cir. 2011) (key aspect is whether the government-created entity "stands in the shoes of a private party").

27.     As set out below and in the attached Declaration of Dr. Michael Forde, an Irish legal expert, at Exhibit "B", the proceedings also fail in several important ways to provide for meaningful court review and, in fact, eliminate that review. *See, e.g., In re Gold & Honey, Ltd.,* 410 B.R. 357, 317 (Bankr. SDNY 2009) (absence of court review as part of analysis of ineligibility as "foreign proceeding"); *cf. In re ABC Learning Ctrs. Ltd., 2013 U.S. App. LEXIS 17844* (3d Cir. Aug. 27, 2013) (availability of meaningful court review as one of seven mandatory tests under Chapter 15).

28.     As noted by Dr. Forde and in the other Objections, IBRC Act § 10 incorporates some provisions of Ireland's general statute governing the winding up of corporations, found in Section VI of the Companies Act of 1963, but it also specifically **disapplies** the right to have the winding up be done and supervised judicially. IBRC Act § 10 (2) (disapplying, *inter alia,* Companies Act of 1963 §§ 206(1), 212-217, 231(3), 234, 246, 277(2), which provisions

otherwise provide for winding up to be done by and through supervision and powers of the court).[5]

29.     IBRC states to this Court, in its Petition for Recognition that under the IBRC Act of 2013, the rights of borrower customers of Anglo-Irish, plc remain intact and unaffected, as per the terms of their loans and mortgages.  Petition for Recognition § 19.[6]

30.     However, this statement is contrary to the past and contemplated future transfers of the loans without Castleway's and Walnut's consent and it is also contradicted by Traynor's and Wallace's Declarations for the IBRC, which state that § 12(1) of the IBRC Act of 2013 authorizes the transfer of loans despite and notwithstanding any anti-assignment provisions in the loan documents.  Traynor Declaration ¶ 23; Wallace Declaration ¶39.

31.     The borrowers submit that Recognition and the Provisional Order should be denied because these alleged rights are contrary to public policy and in violation of their rights under Massachusetts and Pennsylvania law.

32.     For the reasons summarized above, it is questionable whether the IRBC act should be eligible for assistance and comity from this Court.  On the contrary, it appears instead to be special legislation pertaining to banking-related agencies that empower the Minister of

---

[5] As to those provisions of the Companies Act of 1963 that continue to apply, the IRBC Act at § 10(3) and at Schedule 1 to that Act further limit the concept of judicial participation by replacing *en masse,* references to "the court" with references instead to the "special liquidator":

"the provisions of Part VI of the Act of 1963 that apply to IBRC shall, in their application, be construed— (*a*) as if any reference in those provisions to a company being wound up by the Court, however expressed, were a reference to IBRC being wound up by reason of the making of the Special Liquidation Order, (*b*) as if any other reference in those provisions to winding up by the Court, however expressed, were a reference to the winding up of IBRC by reason of the making of the Special Liquidation Order, (*c*) as if any reference in those provisions to a winding up order, however expressed, were a reference to the Special Liquidation Order, (*d*) as if any reference in those provisions to a liquidator, however expressed, were a reference to a special liquidator, and (*e*) as if those provisions had been modified in the manner set out in *Part 1* of the *Schedule*."

[6] The 2009 and 2010 predecessor statues, as noted above, provide that assets that are non-transferrable under foreign law are deemed held in trust.  No Irish court has ruled on whether the 2013 law changes that result.

Finance and parties reporting to him to make and enforce unilateral decisions, and which specifically disapply the availability of remedies or judicial redress.

33. The proposed form of Order is also objectionable to the extent it seeks relief beyond that afforded under Chapter 15, as limited by matters of public policy (11 U.S.C. § 1506), the need to assure just treatment of all holders (11 U.S.C. § 1507(b)) and the protection of interests of creditors and interested parties (11 U.S.C.§ 1522).

34. Borrowers further submit that, under the circumstances set out above, even if recognition is granted, the proposed Order should be modified so that (i) Borrowers are not prohibited from court actions in this country to enforce their rights to prevent or limit transfers that are or would be in violation of Massachusetts or Pennsylvania law under the loan agreements; (ii) Borrowers are not prohibited from seeking appropriate court action in this country to compel issuance of payoff statements; and (iii) to resolve issues relating to the amounts in those payoff statements or to compel issuance of satisfactions if same is required.

                                  GELLERT SCALI BUSENKELL & BROWN, LLC

Dated: September 18, 2013        By: */s/ Charles J. Brown, III*
                                         Charles J. Brown, III, Esq. (#3368)
                                         913 N. Market Street, 10th Floor
                                         Wilmington, DE 19801
                                         Phone: 302.425.5813 / Fax:   302.425.5814

                                         -and-

                                         Doron A. Henken, Esq.
                                         The Law Office of Doron A. Henken
                                         Radnor Financial Center
                                         150 N Radnor-Chester Road, Suite F200
                                         Radnor, PA 19087
                                         Phone: 610.977.2083 / Fax: 610.994.2399
                                         Email: dhenkin@henkinlaw.com

                                         *Attorneys for Castleway Properties, LLC and Walnut-Rittenhouse Associates, L.P.*

# CERTIFICATE OF SERVICE

      I hereby certify that on this date, I caused true and correct copies of the foregoing *Objection by Castleway Properties, LLC and Walnut-Rittenhouse Associates, L.P. to the Verified Petition for Recognition Under Chapter 15 and Proposed Order (the "Recognition Petition" and "Proposed Order") Submitted by Irish Bank Resolution Corporation Limited ("IBRC")* to be served via first class mail, postage prepaid upon the following:

| | |
|---|---|
| Mark D. Collins, Esq.<br>Jason M. Madron, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square, 920 N. King Street<br>Wilmington, DE 19801 | Van C. Durrer, II, Esq.<br>Annie Z. Li, Esq.<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>300 South Grand Avenue<br>Los Angeles, CA 90071 |
| Robert H. Trust, Esq.<br>Linklaters LLP<br>1345 Avenue of the Americas<br>New York, NY 10105 | Office of the United States Trustee<br>844 King Street, Suite 2207<br>Lock Box 35<br>Wilmington, DE 19801 |

 

GELLERT SCALI BUSENKELL & BROWN, LLC

Dated: September 18, 2013

By: */s/ Charles J. Brown, III*
Charles J. Brown, III, Esq. (#3368)
913 N. Market Street, 10th Floor
Wilmington, DE 19801
Phone: 302.425.5813 / Fax:   302.425.5814