IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 15 |
| IRISH BANK RESOLUTION CORPORATION LIMITED (IN SPECIAL LIQUIDATION), | Case No. 13-12159 (CSS) |
| Debtor in a foreign proceeding. | |

**RESPONSE AND LIMITED OBJECTION OF MPA GRANADA HIGHLANDS LLC AND TBCI, LLC AS TRUSTEE TO VERIFIED PETITION UNDER CHAPTER 15 FOR RECOGNITION OF A FOREIGN PROCEEDING**

MPA Granada Highlands LLC ("MPA Granada") and TBCI, LLC as Trustee[1] ("TBCI," and, together with MPA Granada, "Borrowers"), by and through their undersigned counsel, respectfully submit this Response and Limited Objection ("Response") to the Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding filed by the Special Liquidators ("Liquidators") of Irish Bank Resolution Corporation Limited (In Special Liquidation) ("IBRC" or "Debtor").

---

[1] TBCI, LLC is the trustee of 16 realty trusts that are co-borrowers under the loan documents entered into with Anglo Irish Bank Corporation plc.

#21364713 v1
LIBC/4968542.3

**BACKGROUND**

MPA Granada and TBCI are borrowers under separate loan facilities with Anglo Irish Bank Corporation plc ("Anglo") as Lender. The MPA Granada loan has an outstanding balance of approximately $136 million, while the TBCI loan has an outstanding balance of approximately $242 million (each a "Loan" and together the "Loans"). The Loans are governed by sophisticated loan agreements and related documents that include, among other provisions, ongoing funding obligations for construction and capital improvements, mutual obligations with respect to interest rate protection agreements, strict confidentiality and non-disclosure provisions and significant limitations on the Lender's ability to transfer the Loans (the "Loan Agreement(s)").[2]

The Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding [Docket No. 3] ("Petition") and the related materials filed by the Liquidators explain that Debtor IBRC is an Irish state-owned banking entity created on July 1, 2011 under Ireland's Credit Institutions (Stabilisation) Act 2010 (the "Stabilisation Act") as the successor to Anglo Irish Bank Corporation Limited and Irish Nationwide Building Society ("INBS").[3] Memorandum of Law in Support of Irish Bank Resolution Corporation Limited's Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding [Docket No. 7] at 1. The Stabilisation Act was "a mechanism under which the businesses of Anglo and INBS could be merged into IBRC and wound down in an organized fashion." Declaration of Kieran Wallace in Support of Petition [Docket No. 4] at ¶ 8.

The passage of the Irish Bank Resolution Corporation Act 2013 (Special Liquidation) ("Resolution Act") and the entry of the Special Liquidation Order on February 7, 2013 were

---

[2] In the context of any request for relief by the Liquidators that directly affects the Loans, Borrowers will provide details and documents.

[3] Capitalized terms not defined herein shall have the meanings ascribed in the Petition and related filings.

deemed to commence the winding up of IBRC (the "Irish Proceeding"). Declaration of Mark Traynor in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding [Docket No. 5] at ¶ 6. "IBRC's principal asset consists of its loan book…" Petition. ¶ 13. The Liquidators are engaged in a valuation and sale process pursuant to which IBRC's loan book is to be valued and sold. Petition, ¶ 21. If the Liquidators have their way, loans will be sold to the highest bidder whose bid equals or exceeds appraised value; if bids do not at least equal appraised value, loans will be sold to the National Asset Management Agency ("NAMA") at the appraised price. *Id.*

IBRC's remaining U.S. offices were closed in 2012 in conjunction with the sale of substantially all of its U.S. loan portfolio; however "certain of the loans in the U.S. loan portfolio (the 'Remaining U.S. Loans') were not sold because the applicable loan documents required the consent of the borrower for loan assignment." Petition, ¶ 12. The Loans to Borrowers are among the Remaining Loans.

On August 16, 2013, the Liquidators wrote to Borrowers for the stated purpose of (a) updating Borrowers on the sale of their Loans as part of the liquidation of IBRC, and (b) affording them the opportunity to respond in writing concerning conditions for sale of their loans, including whether the Loans should be offered for sale individually or as part of a broader portfolio, as well as the appropriate criteria for assessing who may qualify to bid for the purchase of the Loans from the Liquidators. A copy of the August 16, 2013 letter is attached hereto as Exhibit A.

MPA Granada responded by letter dated August 22, 2013 in which it reminded the Liquidators of (a) the specific limitations and restrictions on Anglo's ability to transfer its interests in the MPA Granada Loan, including the specifications of who may be an "Eligible

Assignee," (b) Anglo's obligation to enter into interest rate hedging transactions with MPA Granada and (c) Anglo's outstanding funding obligations.  Noting that the Loan Agreement had already been breached by the assignment of all of Anglo's rights and obligations to IBRC and by the failure to enter into required interest rate hedging transactions, MPA Granada demanded that IBRC not proceed with its plans to sell its Loan to any other third party (including NAMA) and requested confirmation that IBRC will meet Anglo's ongoing funding commitments. A copy of the August 22, 2013 letter is attached hereto as Exhibit B.

TBCI also responded to the Liquidators, in its case by letter dated August 23, 2013.  In its letter, TBCI reminded the Liquidators that Anglo had previously sought its consent to transfer the Loan to Wells Fargo in October of 2011 and that TBCI had denied that request.  TBCI insisted that all conditions and restrictions on the transfer of Anglo's interest in TBCI's Loan Agreement be observed, including the limitation of transfers to "Eligible Assignees" who would perform the continued funding obligations, and explained the basis for their objection to any potential sale of the Loan as part of a group of IBRC loans.  A copy of the August 23, 2013 letter is attached hereto as Exhibit C.

To date, the Liquidators have not responded to Borrowers' correspondence.  Borrowers are concerned that the Liquidators will cause them harm by breaching the confidentiality provisions of the Loan Agreements as part of their efforts to sell the Loans and will attempt to sell the Loans free of liability for breach and contrary to the requirements in the Loan Agreements that apply to assignment.  Borrowers wish to protect their rights in respect of the Loans and any proposed sale or transfer of the Loans and will take appropriate steps in response to any request for relief by the Liquidators that affect the Loans.

Ordinarily, a chapter 15 request for recognition, such as the present one, would not directly implicate Borrowers' rights with respect to sale of the Loans (other than a possible stay of the right to sue for breach).  However, the "Related Relief" in the proposed Order Granting Recognition of Foreign Main Proceeding <u>and Related Relief</u> ("Proposed Order") (emphasis added) has the potential to materially and adversely affect Borrowers' rights.  This "Related Relief"—set forth in paragraphs 7 and 9 of the Proposed Order—extends beyond the relief that should be effective on recognition of the Irish Proceeding and is simply not supported by the Petition.  As discussed below, the relief set forth in paragraphs 7 and 9 of the Proposed Order should not be granted.[4]

## DISCUSSION

Paragraphs 7 and 9 purport to grant relief that is not automatic, that may affect the rights of Borrowers and that can only be granted (a) on a request of the Liquidators and a record that demonstrates that the relief is "necessary to effectuate the purpose of this chapter [15] and to protect the assets of the debtor or the interests of the creditors"[5]  and (b) " if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."[6] The Proposed Order cannot properly be entered to the extent that it purports to grant the "Related Relief" set forth in paragraphs 7 and 9.

---

[4] References to "section" are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq*.
[5] Section 1521(a):  **"**Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—…"
[6] Section 1522(a): "The court may grant relief under section … 1521…only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected."

### A. Paragraph 7 of the Proposed Order could strip Borrowers of the protections that should be afforded to them by the U.S. Bankruptcy Code.

Assuming that the Court determines that recognizing the IBRC Liquidation as a foreign main proceeding is appropriate,[7] then section 1520 governs the relief to which the debtor is automatically entitled upon recognition and dictates the requirements that apply to any additional relief that may be requested.[8] To obtain relief upon recognition <u>beyond</u> the automatic effects of section 1520, the Liquidators must comply with the requirements imposed for such relief in section 1521 and must satisfy the conditions of section 1522.[9]

Most of the ordering paragraphs in the Proposed Order are either recitations of the findings required by section 1517 or repetition of section 1520 and would be implied in a bare order recognizing the IBRC Liquidation as a foreign main proceeding. However, paragraph 7 of the Proposed Order states: "7. The Foreign Representatives are hereby established as the exclusive representatives of IBRC in the United States <u>and entrusted with the power to administer and realize all or part of IBRC's assets within the territorial jurisdiction of the United States</u>."  (emphasis added).

---

[7] Borrowers do not now take a position on whether the Irish Proceeding and the Liquidators satisfy the requirements for the entry of an order of recognition under section 1517 or whether the entry of such an order would be manifestly contrary to the public policy of the United States.  However, Borrowers reserve their rights to join in the objection filed by Burlington Alpha LLC and Burlington Beta LLC based on information disclosed in the factual discovery that they plan to take in preparation for their final objection. *See* Preliminary Objection to Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding  [Docket No. 41] (the "Note Holders' Objection").

[8] For example, Section 1520 applies the automatic stay of section 362, and would stay any action by Borrowers against IBRC for breaches of the Loan Agreements, including sale of the Loans in violation of the restrictions on transfer of the Loans. But, as discussed below, this constraint is balanced by the protections afforded by sections 363(e) and 361, which would apply if the Loans were sold free of Borrowers' rights.

[9] While relief may also be requested under section 1507, Additional Assistance, the relief encompassed by the Proposed Order would be available under section 1521 and recourse to section 1507 would be unnecessary.  See *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012). The legislative history also makes clear the bounds of section 1520: "in general, this chapter sets forth all the relief that is available as a matter of right based upon recognition hereunder..." H.R. Rep. No. 109-31, pt. 1, at 114.

1. **"Entrustment" of assets is prohibited unless the Court finds that the interests of creditors and other interested entities are "sufficiently protected."**

Before assets can be "entrusted" to the Foreign Representatives, this Court must find that the interests of creditors in the United States and other interested entities are "sufficiently protected." Specifically, entrustment of assets for purposes of distribution requires a "sufficient protection of interests of U.S. creditors" finding under section 1521(b),[10] and entrustment of assets for purposes of administration is subject to the "sufficient protection" requirement of section 1522 that encompasses creditors and other interested entities.[11] The Liquidators have not even attempted to make a showing that purports to satisfy these requirements in the verified Petition, and this Court has no basis on which to make such a finding.

2. **"Realization" of assets is prohibited unless the Court also finds that the interests of third parties are "adequately protected."**

In addition, entrustment to "realize all or part of IBRC's assets" implies monetizing those assets. To the extent that such "realization" involves the sale of loans as discussed in the Petition, then that sale must be conducted in accordance with section 363 and remains subject to section 1522. As discussed below, section 363 requires that, prior to granting a debtor the relief of a right of sale, the court must first ensure that any entity with an interest in the asset to be sold is "adequately protected."

---

[10] Section 1521(b): "Upon recognition of a foreign proceeding, whether main or nonmain, the court may, at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative… provided that the court is satisfied that the interests of creditors in the United States are sufficiently protected." See also *In re Tri-Continental Exchange, Ltd.*, 349 B.R. 627, 636 (Bankr. E.D. Cal. 2006)

[11] "In addition, § 1522 authorizes the court to assure that interests of creditors and interested parties are 'sufficiently protected,' to impose conditions on any discretionary relief, including both forms of entrustment under § 1521…" *Tri-Continental*, *Id.*

The plain language of section 1520 is clear that section 363 applies to a transfer of an interest of the debtor in property within the territorial jurisdiction of the United States.[12] As this Court has previously confirmed, section 363 remains applicable to a sale of assets in a chapter 15 case even where a foreign main proceeding has previously approved the sale: "There can be no doubt that promoting comity is a general objective of Chapter 15. But it is not the end all be all of the statute. To require this Court to defer in all instances to foreign court decision would gut section 1520. It is important to note that Section 1520 is mandatory. Sections 1507, 1519, 1521, and 1522 provide the Court with broad discretion to 'grant any appropriate relief.' While those sections cross reference each other they do not mention, let alone authorize, amendment of section 1520 to make section 363 inapplicable." *In re Elpida Memory, Inc.*, 2012 WL 6090194, *8 (Bankr. D. Del. 2012).[13]

Accordingly, were the Liquidators to sell Borrowers' Loans under section 363 free and clear of Borrowers' claims for damages for violation of some or all of the restrictions on assignment and free of exposure for IBRC's other breaches, then Borrowers' rights would be entitled to both "adequate protection" under section 363 and "sufficient protection" under section 1522. When this Court permitted, in a chapter 11 case, a sale of assets "free and clear" of a

---

[12] Section 1520(a) provides, in pertinent part: "Upon recognition of a foreign proceeding that is a foreign main proceeding—
**(1)**sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
**(2)**sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;"

[13] Cases uniformly impose the balancing of rights required by the "sufficiently protected" language of sections 1521(b) and 1522. See, e.g., *In re Tri-Continental Exchange, Ltd.*, 439 B.R. 627, 636 (Bankr. E.D. Cal. 2008); *In re The International Banking Corporation B.S.C.*, 439 B.R. 614, 626-627 (Bankr. S.D. New York 2010) ("The Court may not grant relief under § 1521, unless 'the interests of the creditors and other interested entities, including the debtor, are sufficiently protected,' 11 U.S.C. § 1522(a), and may subject any relief granted 'to conditions it considers appropriate, including the giving of security or the filing of a bond.' 11 U.S.C. § 1522(b). 'The idea underlying [§ 1522] is that there should be a balance between relief that may be granted to the foreign representative and the interests of the persons that may be affected by such relief.' GUIDE ¶ 161 [UNCITRAL Model Law, Guide to Enactment])." *In re Qimonda Bankruptcy Litigation*, 433 B.R. 547, 571 (E.D. Vir. 2010)

counterparty's rights to enforce an anti-assignment provision, it substituted a right to a "money satisfaction" of any damages resulting from an assignment without the contractually-required consent. The Court recognized that section 363(f)(5) permitted the sale free and clear, but noted the simultaneous trigger of an entitlement to "adequate protection" by section 363(e), such that any damages suffered by the counterparty would attach to the sale proceeds. *In re American Home Mortgage Holdings, Inc.*, 402 B.R. 87, 102 (Bankr. D. Del. 2009).[14]

Without pre-determining the conditions necessary to "sufficiently protect" Borrowers' rights under sections 1521(b) or 1522, Borrowers should at least be entitled to "adequate protection" from the sale proceeds for any damages that they suffer by virtue of a sale that does not comply with the transfer restrictions. Simply granting a right to realize assets could eviscerate the requirements of sections 363 and 1522 and is not appropriate relief based on the Verified Petition. This Court should not abrogate the Borrowers' statutory protections by including the language of paragraph 7 in the Proposed Order.

### B.  Paragraph 9 of the Proposed Order cannot be entered without a finding from the Court that the interests of U.S. creditors will be protected in the Irish Proceeding.

The relief that would be ordered under paragraph 9 of the Proposed Order is similarly inappropriate on this record. Paragraph 9 provides: "All claims of creditors and other stakeholders of IBRC shall be adjudged pursuant to the terms of the Irish Proceeding." This may or may not ultimately be appropriate relief, but is not relief that can be granted simply based on recognition of the IBRC Liquidation.

---

[14] Section 363(f) provides: "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
 **(5)** such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Section 363(e) provides in pertinent part: "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property …sold… or proposed to be …sold…the court…shall prohibit or condition such …sale…as is necessary to provide adequate protection of such interest."

The Liquidators make no secret that the Petition was filed "…to bind IBRC's U.S. creditors to the Irish proceeding and to protect IBRC's U.S. assets from any enforcement actions by individual creditors."  The Petition, ¶ 2.  This could include an attempt to bind Borrowers to provisions of the Resolution Act that purport to permit transfers of loans notwithstanding any restrictions in law or contract.  Resolution Act, Section 12, Ex. B to Declaration of Kieran Wallace in Support of Petition [Docket No. 4].

To the extent that "claims" could be construed to include Borrowers' rights under their loan documents and damages suffered as consequence of IBRC's breaches of the Loan Agreements, then those claims for damages should be recoverable in full, either as an adequate protection payment, as sufficient protection of Borrowers' rights and interests under section 1520, as an offset under the terms of the loan documents or as recoupment.[15]  Before relief directing claims to the Irish Proceeding can be granted, the relief must be requested under section 1521, entitlement to that relief must be established and parties whose interests are affected must be sufficiently protected.  Before any such relief can enter, the Liquidators must establish that the interests of U.S. creditors will be protected in the Irish Proceeding.[16]

Again, the Liquidators have offered nothing to the Court to make such a finding.  Indeed, Borrowers have strong reason to question whether the Irish Proceeding will offer protection to their interests.  As discussed at length in the Note Holders' Objection, the Irish Proceeding and

---

[15] Affirmative defenses of recoupment and set-off cannot be extinguished by a section 363 sale.  *Folger Adam Security, Inc. v. DeMatteis /MacGregor, JV, et al,* 209 F.3d 252 (Third Cir. 2000).

[16] See, e.g. *In re Sivec SRL*, 476 B.R. 310, 324 (In declining the foreign debtor's request that a construction retainage be turned over to an Italian court, the court said "This Court is unconvinced that the interests of U.S. creditors have been or will be protected in the Italian proceeding."); *In re The International Banking Corporation B.S.C.*, 439 B.R. 614, 628 (Bankr. S.D. New York 2010) (Refusing to vacate an attachment order and turn over funds for administration in Bahrain without assurance that the creditor's rights will be protected).

the Resolution Act are designed to benefit the Irish government to exclusion of the rights of non-government creditors and parties in interest.[17]

## CONCLUSION

For the reasons set forth above, the portion of paragraph 7 of the Proposed Order providing that the Liquidators are "entrusted with the power to administer and realize all or part of IBRC's assets within the territorial jurisdiction of the United States" should be stricken and all of paragraph 9 of the Proposed Order directing claims should be adjudged pursuant to the terms of the Irish Proceeding should also be stricken.  To issue an order that includes the full text of paragraphs 7 and 9 would be premature, is not supported by the record or applicable law and would result in significant harm to Borrowers' rights.

*[Remainder of page intentionally left blank.]*

---

[17] Note Holders' Objection, supra, at ¶¶ 11-14 (docket No. 41].

Dated:  September 18, 2013
Wilmington, Delaware

Respectfully submitted,

 /s/ John H. Schanne II
David M. Fournier (DE No. 2812)
John H. Schanne II (DE No. 5260)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19801-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
Email:  fournierd@pepperlaw.com
            schannej@pepperlaw.com

-AND-

Daniel M. Glosband (admitted *pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
Email:  dglosband@goodwinprocter.com

*Counsel to MPA Granada Highlands, LLC and TBCI, LLC as Trustee*