## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 15 |
| IRISH BANK RESOLUTION | : | |
| CORPORATION LIMITED | : | Case No.: 13-12159 (CSS) |
| (IN SPECIAL LIQUIDATION) | : | |
| | : | |
| Debtor in a foreign proceeding. | : | |
| _____ | : | |
| TAMPA PORT AUTHORITY, a body | : | |
| Politic and corporate existing under | : | |
| the laws of the State of Florida, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No.: 14-50084(CSS) |
| | : | |
| CHUCK TAYLOR of Madison | : | Re: Docket Nos.: 20, 21, 22 and 23 |
| Marquette, in his Capacity as Receiver | : | |
| for CHANNELSIDE BAY MALL, LLC, | : | |
| a Florida Limited Liability Company, | : | |
| and IRISH BANK RESOLUTION | : | |
| CORPORATION LIMITED, f/k/a | : | |
| Anglo Irish Bank Corporation, PLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM ORDER

The issue before the Court is whether to sustain an objection to dismissal of an

adversary proceeding, pursuant to Fed. R. Bankr. P. 7041, through a *Stipulation of*

*Voluntary Dismissal Without Prejudice*[1] ("Stipulation to Dismiss") because: (i) the

Stipulation to Dismiss was not signed by a party that has filed a motion to intervene that

has not yet been granted by the Court; or (ii) dismissing the adversary proceeding would

---

[1] Adv. D.I. 20.

cause prejudice to the proposed-intervenor.  For the reasons set forth below, the Court overrules the objection and will allow dismissal without prejudice of the adversary proceeding under the Stipulation to Dismiss.

## STATEMENT OF FACTS

### A.  Procedural History

On March 13, 2014, the plaintiff Tampa Port Authority (the "Port") filed the above-captioned adversary action[2] (the "Port Adversary Action") against Chuck Taylor, Channelside Bay Mall, LLC, Irish Bank Resolution Corporation Ltd. (collectively, the "Defendants") seeking declaratory judgment.  Thereafter, on March 18, 2014, Liberty Channelside, LLC ("Liberty") moved to intervene in the action ("Motion to Intervene").[3] The Court scheduled a status conference in the adversary action for April 16, 2014.  Prior to an answer being filed or the Court hearing the Motion to Intervene (and shortly before the status conference), the Port and the Defendants filed a *Stipulation of Voluntary Dismissal Without Prejudice*[4] ("Stipulation to Dismiss"), pursuant to Fed. R. Bankr. P. 7041.

The Court, unaware of the Stipulation to Dismiss, held a telephonic status conference, on April 16, 2014.  At the status conference, the parties informed the Court that they had filed a Stipulation of Dismissal.  However, Liberty, as potential intervener,

---

[2]  Adv. D. I. 1.

[3]  Adv. D.I. 7, which was later amended, Adv. D.I. 17.

[4]  Adv. D.I. 20.

objected.  The Court requested letter submissions from the parties.  The parties have filed

their letter submissions and the matter is ripe for disposition.[5]

## B.  Factual Background

The Port is the owner of a parcel of a waterfront retail center known as

"Channelside Bay Plaza" in downtown Tampa, Florida (the "Retail Center").  The Retail

Center was formerly leased by Channelside Bay Mall, LLC (together with its predecessors

referred to herein as the "Developer") from the Port under a long-term ground lease

("Ground Lease") executed in 1998.  The Ground Lease was, in turn, mortgaged by the

Developer in favor of IBRC, pursuant to a series of loan documents, including a leasehold

mortgage (collectively, the "Loan Documents"),  to finance $27,000,000 of improvements

to the previously undeveloped fee.

In February 2010, the Port filed an action to evict the Developer and IBRC (as

leasehold mortgagee) in Florida state court ("Eviction Action").  In March, 2010, IBRC, in

turn, filed an action in Florida state court to foreclose its leasehold mortgage

("Foreclosure Action").  The Eviction Action and Foreclosure Action continued and led

to the Florida state court's appointment of the Receiver as a fiduciary to take possession

and operate the Retail Center and seek out a substitute long-term tenant that would allow

IBRC to ultimately salvage some portion of the sum lent to the Developer to improve the

underlying fee.

---

[5] Adv. D.I. 21, 22 and 23.

In April 2013, Liberty and IBRC executed a contract to assign the Ground Lease for $7,000,000 to Liberty; however, this deal did not close.  In July 2013, the Port sought to take back the Retail Center, free of the Ground Lease, but with the improvements, for $5,750,000.  Shortly thereafter, IBRC, through its foreign representatives, filed a verified petition for relief under Chapter 15, which the Court recognized.

In December 2013, Liberty filed an adversary complaint[6] alleging that the Port actionably interfered with the contractual relations between IBRC and Liberty, and IBRC has improperly acquiesced, precluding Liberty from completing the assignment of the Loan Documents and Ground Leave ("Liberty Adversary Action").  IBRC and the Port moved to dismiss the Livery Adversary Action.  After hearing the motion to dismiss, the Court dismissed the four counts brought by Liberty; however, the Court granted Liberty leave to amend its complaint regarding the alleged tortious interference count.  On May 1, 2014, Liberty filed its amended complaint.[7]

As noted above, in March 2014, the Port filed its adversary action against the Defendants.  In the adversary action, the Port sought declaratory relief determining that (capitalized terms not defined herein shall have the meaning ascribed to them in the Port's Adversary Complaint): (i) the Lease is not an asset of IBRC; (ii) the Leasehold Interest is not an asset of IBRC; (iii) until such time as IBRC and/or the Foreign Representatives assume and cure all defaults under the Lease through foreclosure on the

---

[6]  Adv. Pro. No. 13-52542, D.I. 1.

[7]  Adv. Pro. No. 13-52542, D.I. 45 and 46.

IBRC Mortgage, the Lease remains an executory contract by and between the Port and the Receiver; (iv) until such time as IBRC purchases the Leasehold Interest at a foreclosure sale, or otherwise obtains legal title to the Leasehold Interest, title to the Leasehold Interest remains legally vested in the Receiver; (v) an award of all costs of the adversary litigation and reasonable attorneys' fees.

Liberty filed its motion seeking to intervene[8] in the Port Adversary Action alleging that Liberty is entitled to a constructive trust over the Ground Lease and the Retail Center. Prior to the Court ruling on the intervention motion, the Port and IBRC entered into the Stipulation to Dismiss the Port Adversary Action, to which Liberty objected.

## ANALYSIS

As set forth above, Liberty objects to the dismissal of the Port Adversary Action. Liberty asserts that the Port consciously omitted Liberty as a party to the Port Adversary Action.  Furthermore, Liberty asserts that by filing its motion to intervene, it has "appeared" in the Port Adversary Action and should be considered a necessary signatory, pursuant to Rule 41(a)(1)(A)(ii).  In the alternative, Liberty argues that the Court should construe the Stipulation to Dismiss as a motion under Rule 41(a)(2), in which the Port is not vested with the absolute right of dismissal because it is subject to the Court's discretion.  IBRC and the Port disagree with Liberty.

Fed. R. Civ. P. 41, made applicable to these proceedings pursuant to Fed. R. Bankr. P. 7041, states:

---

[8] Adv Pro. No. 14-50084, D.I. 7 and 8.

**(a) Voluntary Dismissal.**

**(1) By the Plaintiff.**

(A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect.* Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

**(2) By Court Order; Effect.** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.[9]

**A.  Stipulation of Dismissal**

The Court has not ruled on the Motion to Intervene.  As such Liberty is not yet a party to the action.  In such cases, courts have held that as the parties stipulated to

---

[9] Fed. R. Civ. P. 41(a).

dismissal there is "no case or controversy" pending in which the potential intervener can

intervene.[10]  Moore's Federal Practice states:

> A stipulation [under Fed.R.Civ.P. 41(a)(1)(ii)] filed during the
> pendency of a motion to intervene is effective to dismiss the
> action, since the proposed intervenors do not become parties
> within the meaning of the Rule until their motion is granted.[11]

*However*, courts have stated that there *may* be "circumstances where an intervenor could

and should be treated as a *de facto* party and the Court might invoke equitable principles

---

[10] *Homesite Ins. Co. of the Midwest v. Robards*, 3:13-CV-515-TAV-CCS, 2014 WL 359823, *2 (E.D. Tenn. Feb. 3, 2014) (holding that the court lacked jurisdiction over the motions to intervene because there was no case or controversy pending in light of the dismissal); *Reagan v. Fox Navigation, LLC*, CIV.A. 302CV627CFD, 2005 WL 2001177 (D. Conn. Aug. 17, 2005) ("[C]ourts have ruled that once the parties have filed a Rule 41(a)(1)(ii) stipulation of dismissal, there is no longer a pending case or controversy into which a non-party may intervene." (citation omitted)); *GMAC Commercial Mortgage Corp. v. LaSalle Bank Nat. Ass'n*, 213 F.R.D. 150 (S.D.N.Y. 2003) (denying a motion to vacate a parties' stipulation of dismissal because "there is no 'case or controversy' pending in light of the dismissal; *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620–21 (D.Mass. 1988)(denying motion to intervene because stipulation of dismissal under Rule 41(a)(1)(ii) was effective immediately upon filing, without any action by the court; there was no justiciable action pending in which to intervene); *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir. 1998)(adopting cases that hold that dismissal under Rule 41(a)(1)(ii) is effective automatically and does not require judicial approval); *Steiner v. Atochem, S.A.*, 89 CIV. 7990, 2002 WL 1870322, at *4 (S.D.N.Y. Aug.13, 2002)(citing cases that hold that voluntary dismissal moots all pending motions); Fed.R.Civ.P. 41(a)(1)(ii)("[A]n action may be dismissed by the plaintiff without order of court by filing a stipulation of dismissal signed by all parties who have appeared in the action.").

[11] 8 James Wm. Moore et al., Moore's Federal Practice § 41.34[4][b], at 41–116 (3d ed. 2013) (citations omitted).  However, if the Court had granted the Motion to Intervene then the claims of the intervenor could not be dismissed on the basis of a stipulation signed only by the original parties.  *Forest Serv. Employees For Envtl. Ethics v. U.S. Forest Serv.*, CIV.A.08-323ERIE, 2009 WL 1324154, *2 (W.D. Pa. May 12, 2009).

> This requirement applies equally to parties who have intervened in the
> original action.  *See Wheeler v. American Home Prods. Corp.* (Boyle–Midway
> Div.), 582 F.2d 891, 896 (5th Cir.1977) ("The District Court dismissed this
> action, including the claims of the [plaintiff] intervenors, on the basis of a
> stipulation between the original parties. This could not properly be
> done.").  This is because, "once intervention has been allowed, the original
> parties may not stipulate away the rights of the intervener." *Id.* (citing 3B
> Moore's Federal Practice (2nd ed.) 24–671, 672).

*Id.*  In *Forest Service Employees for Environmental Ethics*, the court had granted intervention two days prior to the stipulation of dismissal being filed.  As such, the court held that the dismissal could not be effectuated pursuant to Rule 41(a)(1)(A)(ii). *Id.* (Ultimately, the court dismissed the action pursuant to Rule 41(a)(2) as the intervener-defendants failed to demonstrate that they would suffer legal prejudice by the dismissal.  *Id.* at *4-5).

to estop the stipulating parties from invoking a rule which would prejudice the rights of a party whose motion to intervene is pending."[12]

Liberty cites to *Green v. Nevers*[13] in support of its position.  In that case, the court found that a stipulation was not in compliance with Rule 41(a)(1)(ii) because it was not signed by all the parties who appeared in the action.  In *Green*, a wrongful death action, there was a state statute that "effectively makes the participation virtually automatic of 'all persons who may be entitled to damages. . . .'"[14]  *Green* is easily distinguishable from this case as there is no state statute involved that makes participation automatic.  Interestingly, the *Green* court cites to, relies upon, and distinguishes the *Green* facts from *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, which held:

> Here, the plaintiffs and defendants together have sought to dismiss their cases under Fed.R.Civ.P. 41(a)(1)(ii), which permits all parties to an action to agree to a dismissal without further action by the court.  Intervenors were not named parties when plaintiffs and defendants filed their stipulations

---

[12] *Eli Lilly & Co. v. Synthon Labs., Inc.*, 538 F. Supp. 2d 944, 947 (E.D. Va. 2008) (*citing Alternative Research and Dev. Found. v. Veneman*, 262 F.3d 406, 411 (D.C.Cir. 2001); *Fleet Capital Corp. v. Merco Joint Venture, LLC*, No. 02 CV 0279(ILG), 2002 WL 31528633, at *3-4 (E.D.N.Y. Sept. 3, 2002) ("Thus, allowing Fleet to voluntarily dismiss this case would result in Bombardier being deprived of the opportunity to have its motion for intervention heard, and would force Bombardier to commence its own action-at the expense of drafting a complaint and effecting service-against the defendants.  The Court perceives no reason, and Fleet has presented none, to so prejudice Bombardier's rights.  Accordingly, the Court addresses below Bombardier's motion for intervention, and, because it finds intervention appropriate, grants the motion *nunc pro tunc* to June 7, 2002, the date the motion was fully submitted to the Court."). *See also Butler v. Denton*, 150 F.2d 687 (10th Cir.1945) (holding that an intervention tendered justiciable issues for determination and a voluntary dismissal was improper). *But see Bldg. Concepts & Designs Constr., Inc. v. Travelers Prop. Cas. Co. of Am.*, CIV.A. 06-2777, 2006 WL 2294866, *2 (E.D. La. Aug. 7, 2006) (noting that cases holding that dismissal can be held invalid even if the defendant has not filed an answer or a motion for summary judgment are "against the tide of the strong weight of authority" and continuing to hold that "[a] district court has no power or discretion to deny plaintiffs' right to dismiss or to attach any condition or burden to that right." (citations and internal quotations omitted)).

[13] *Green v. Nevers*, 92-CV-76881-DT, 1993 WL 1620511 (E.D. Mich. Apr. 13, 1993).

[14] *Green v. Nevers*, 92-CV-76881-DT, 1993 WL 1620511 at *10.

> of dismissal, nor did their filing of a motion to intervene give them party status. **Indeed, motions to intervene are not granted automatically, nor does their filing constitute an automatic stay. Rather, the moving party must satisfy the court that it has met the four elements required for a motion to intervene to be granted.**[15]

The *Green* court, recognizing that intervention was not automatic upon request, relied on the state statute in denying the dismissal.

Liberty also cites to *United States v. Mansion House Center North*,[16] which held that the stipulating parties could not voluntarily dismiss a foreclosure action without approval of the court, since the foreclosure action and the other related litigation were required to be treated as one case even though a formal order consolidating the cases was only recently entered, and the receiver involved in the related litigation did not agree to or consent to the proposed settlement.[17]   Again, *Mansion House Center North* is clearly distinguishable as there is no court order allowing Liberty to intervene.

Liberty also turns to *Fleet Capital Corp. v. Merco Joint Venture, LLC*,[18] which, at first blush, seems most similar to Liberty's request.   In *Fleet Capital*, Bombardier moved to intervene in litigation, which was opposed by the plaintiff.   The Court scheduled Bombardier's intervention motion for a hearing.   The parties then informed the court that they were attempting to find a global resolution for the plaintiff's and Bombardier's claims.   As such, the court adjourned and rescheduled the hearing on the intervention

---

[15] *Mut. Produce, Inc. v. Penn Cent. Transp. Co.*, 119 F.R.D. 619, 620 (D. Mass. 1988) (emphasis added).

[16] *United States v. Mansion House Ctr. N.*, 95 F.R.D. 515 (E.D. Mo. 1982).

[17] *Id.* at 516-17.

[18] *Fleet Capital Corp. v. Merco Joint Venture*, LLC, 02 CV 0279 (ILG), 2002 WL 31528633.

motion.  Again, prior to the hearing on the intervention motion, the parties contacted the

court and, in anticipation of settlement of all parties' claims, requested that the

intervention motion be continued.  Later, the court received a notice of dismissal from

the plaintiff; however, Bombardier's claims were not settled and this objected to the

dismissal.  The court stated:

> [T]he Court finds that Fleet's voluntary dismissal unfairly
> prejudices Bombardier.  If this action is dismissed,
> Bombardier's motion for intervention will be rendered moot.
> Yet Bombardier agreed to adjourn the hearing on its motion
> to intervene only to give the parties an opportunity to reach a
> *global* resolution of all the claims arising out of the defendants'
> actions.  While Fleet has resolved its claims against the
> defendants, Bombardier has not.  Thus, allowing Fleet to
> voluntarily dismiss this case would result in Bombardier
> being deprived of the opportunity to have its motion for
> intervention heard, and would force Bombardier to
> commence its own action-at the expense of drafting a
> complaint and effecting service-against the defendants.  The
> Court perceives no reason, and Fleet has presented none, to
> so prejudice Bombardier's rights.  Accordingly, the Court
> addresses below Bombardier's motion for intervention, and,
> because it finds intervention appropriate, grants the motion
> *nunc pro tunc* to June 7, 2002, the date the motion was fully
> submitted to the Court.[19]

The *Fleet Capital* court was concerned about the lapse of time and the continuances of the

intervention motion, as well as, the representations that the settlement discussions would

settle all claims, rather than just plaintiff's claims.  This holding is also distinguishable

from the case *sub judice*.  Here, there have been no continuances of the intervention

---

[19] *Id.* at 3 (emphasis supplied).

motion, no representations of a global settlement, and Liberty also has a pending adversary action against IBRC and the Port.

As such, the Court finds that the Stipulation of Dismissal has been signed by all parties to the action, as Liberty's motion for intervention has not been granted to date. The Court will allow the Port and IBRC to voluntarily dismiss the Port Adversary Action, without prejudice.  No order from the Court is required nor entered as to the dismissal.[20]

## B. Dismissal by Court Order

Liberty also argues that as it was a *de facto* party, the Port Adversary Action cannot be dismissed without a court order.  Liberty relies on *Butler v. Denton*[21] and *Nance v. Jackson*[22] in support of its position that the Stipulation to Dismiss requires court approval in order to be effective.  Both of these cases are readily distinguishable.

In *Butler v. Denton*, the United States had filed its plea for intervention, on its own behalf and on behalf of the restricted Native Americans involved in the action, as it was entitled to do under a statute, prior to the plaintiff's motion for leave to dismiss was filed.[23]  The *Bulter* court treated the plea of intervention as the equivalent of an answer and held:

> It therefore is clear that the plea of intervention tendered justiciable issues for determination.  And in that posture of

---

[20] *See* p. 16, *infra.*

[21] *Butler v. Denton*, 150 F.2d 687 (10th Cir. 1945).

[22] *Nance v. Jackson*, 56 F.R.D. 463 (M.D. Ala. 1972).

[23] *Butler*, 150 F.2d at 689-90. *See also Fort Sill Apache Tribe of Oklahoma v. United States*, CIV-08-0541-F, 2008 WL 2891654, *1 n. 1 (W.D. Okla. July 23, 2008).  *See, e.g., Progressive Steelworkers Union v. Int'l Harvester Corp.*, 70 F.R.D. 691, 693 (N.D. Ill. 1976) (citations omitted) ("Voluntary dismissal will be denied if the merits of a case have been considered or if issue has been joined.").

> the case, plaintiff was not vested with the absolute right of
> dismissal, either by the filing of a notice of dismissal or by the
> filing of a motion in the nature of such notice.  She could
> dismiss only upon order of the court, and upon such terms
> and conditions as the court deemed proper.  Under the rule,
> the court is vested with a reasonable discretion in the matter
> of dismissal after the filing and service of the answer, or the
> filing and service of a plea of intervention which tenders one
> or more justiciable issues, * * * .'[24]

In *Butler*, the "government's plea of intervention directly raised substantial issues with regard to plaintiff's right to certain funds, restrictions on the funds, and proper custody of the funds."[25]  As such, the *Butler* court denied dismissal.  Here, however, Liberty is not directly raising substantial issues regarding the Port's right to the Retail Property; instead, Liberty is alleging a constructive trust, something it can assert in the Liberty Adversary Action.

In *Nance v. Jackson*, the individual-plaintiffs sought to be voluntarily dismissed from the pending action while a motion to intervene was pending.  In the opinion, the court first addressed intervention and stated "it cannot be said that petitioners' interests can only be protected in the current proceeding, or even that protection of petitioners' interests will as a practical matter be impaired or impeded by the deposition of this case."[26]  Next the court addressed the voluntary dismissal, the court stated that "the essential question is whether the dismissal of the action will be unduly prejudicial to the defendants."[27]  The court then held that the dismissal, in the early stage of the

---

[24] *Butler*, 150 F.2d at 690.  *See also Kilpatrick v. Texas & P.R. Co.*, 72 F. Supp. 632, 634 (S.D.N.Y. 1947).

[25] *Ecuadorian Gulf Oil Co. v. Atl. Richfield Co.*, 73 F.R.D. 99, 100 (C.D. Cal. 1976).

[26] *Id.* at 471.

[27] *Id.* at 471.

proceedings, would not prejudice the interests of any party and as such granted the dismissal.[28]    Similarly, Liberty's interests will not be impaired or impeded by the dismissal of the Port Adversary Action; furthermore, the Port Adversary Action is at an early stage, no ground will be lost by Liberty in having to "start over" or continue in the Liberty Adversary Action.

As such, the Court finds again that the case may be dismissed by stipulation without Court order.

**C. Equitable Grounds**

Finally, Liberty raises four equitable arguments as to why the case should not be dismissed.  None of them are persuasive.

*i.    Subject Matter Jurisdiction.*

Liberty states:

> Liberty contends that both the Port and IBRC have asserted that this Court cannot or should not take jurisdiction over disputes relating to the Ground Leave, Loan Documents, and/or the Retail Center, seeking instead dismissal or abstention of claims asserted by Liberty on numerous grounds.

However, parties cannot confer subject matter jurisdiction upon a federal court, principals of estoppel do not apply, and a party does not waive the subject matter jurisdiction requirement by failing to challenge jurisdiction early in the proceedings.[29]  As

---

[28] *Id.*

[29] *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 2104, 72 L. Ed. 2d 492 (1982).

such, dismissal of the Port Adversary Action will not affect whether this Court has subject matter jurisdiction over the parties' disputes.

### ii.    Strategy Concerns

Second, Liberty argues:

> Liberty contends that it would be inequitable to permit the Port to opt in and out of this Court for strategy reasons, or any reason after the decision to submit has occurred.

The Port's Adversary Company was a determination that the Ground Lease was not subject to being administrated by the foreign representatives because the "Leasehold Interest is not an asset of IBRC" and "title to the Leasehold Interests remains legally vested in the Receiver."[30]  This position is consistent with any subject-matter jurisdiction arguments that Liberty impugns to the Port.  Furthermore, all of the parties' rights are preserved by the nature of the dismissal without prejudice.

### iii.    Appellate Argument

Third, Liberty argues

> Liberty contends that the relief requested in the Port Complaint is tantamount to an appeal by the Port of the gravamen of this Court's ruling on February 18, 2014, in connection with a contested matter (the "Sale Motion Contested Matter") that pitted IBRC and the Port against Liberty in connection with the proposed assignment of IBRC's interest in the Retail Center to the Port over the objection of Liberty.

If, in fact, the Port Adversary Action is a disguised appeal of this Court's ruling, then it would be inappropriate for the adversary action to continue (as the Port could have filed

---

[30] Port Adversary Proceeding, Adv. D.I. 1, p. 17.

an appeal or a motion for reconsideration).  As such, there is no prejudice to Liberty if a procedurally improper adversary action is dismissed.

### iv.    Dismissal "Without Prejudice"

Lastly, Liberty argues:

> Liberty contends that the idea that the Port Complaint would be dismissed without prejudice to the Port's re-filing the same might permit the Port to raise at some future date the same arguments that Liberty urges to be frivolous in light of this Court's prior rulings in the Sale Motion Contested matter.

A dismissal without prejudice is exactly that – a dismissal without prejudice to the rights of any party to raise any argument in the adversary proceeding commenced by Liberty on jurisdiction or any other matter.  Liberty will be able to raise any issues it desires – Liberty is not prejudiced one way or the other by this type of dismissal.  A dismissal without prejudice preserve the rights of all the parties, including Liberty.

Furthermore, Liberty states: "this Court is already mindful that Liberty will imminently file an amended complaint in the Liberty [Adversary] Proceeding."[31]  As such, any arguments that Liberty would like to advance against IBRC or the Port can be completed in the Liberty Adversary Action.

## CONCLUSION

As the Court has not granted Liberty's Motion to Intervene, the Port and IBRC can dismiss the Port Adversary Action, without prejudice and without court order, pursuant

---

[31] Liberty Letter, p. 5.

to Rule 41(a)(1)(A)(ii).  Liberty is not a party to the Port Adversary Action prior to a ruling on the Motion to Intervene, as such Liberty's consent for dismissal is not warranted.

The Court is in an unusual procedural posture.  Although this document is styled as a Memorandum Order, the Court is **not** dismissing the adversary proceeding by Court order.  Rather, the action is being dismissed by stipulation of the parties.  The sole purpose and effect of this order is to overrule the objection of Liberty to the Stipulation to Dismiss.

_____
Christopher S. Sontchi
United States Bankruptcy Judge

Date: May 12, 2014