## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re:                                              :    Chapter 15
                                                    :
IRISH BANK RESOLUTION CORPORATION                   :    Case No. 13-12159 (CSS)
LIMITED (IN SPECIAL LIQUIDATION),                   :
                                                    :    **Hearing: May 11, 2015 at 2:00 p.m. (EST)**
Debtor in a foreign proceeding.                     :    **Objection Deadline: May 4, 2015 at 4:00**
                                                    :    **p.m. (EST)**
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**FOREIGN REPRESENTATIVES' MOTION FOR ORDERS: (A)(I) ESTABLISHING
BIDDING PROCEDURES RELATING TO THE SALE OF CERTAIN ASSETS
RELATING TO THE MANDARIN ORIENTAL BOSTON, (II) APPLYING SECTION
365 OF THE BANKRUPTCY CODE FOR PURPOSES OF THIS MOTION, (III)
APPROVING FORM AND MANNER OF NOTICE OF ALL PROCEDURES,
PROTECTIONS, SCHEDULES, AND AGREEMENTS, (IV) ESTABLISHING
PROCEDURES RELATING TO THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS, AND (V) SCHEDULING A HEARING TO
CONSIDER THE PROPOSED SALE, AND (B)(I) APPROVING THE SALE OF SUCH
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND
INTERESTS, (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS, AND (III) GRANTING RELATED RELIEF**

Kieran Wallace and Eamonn Richardson, the duly appointed and authorized

foreign representatives (the "Foreign Representatives" or "Special Liquidators") of Irish Bank

Resolution Corporation Limited ("IBRC" or the "Debtor"), by and through their undersigned

counsel, hereby file this motion (the "Motion"), pursuant to sections 105, 363, 365, 1520, and

1521 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006, and

9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 6004-1 of

the Local Rules for the United States Bankruptcy Court, District of Delaware (the "Local Rules")

in the above-captioned chapter 15 case (the "Chapter 15 Case") for entry of an order (the

"Bidding Procedures Order"), substantially in the form attached hereto as Exhibit A (i) approving

the proposed auction and bidding procedures (the "Bidding Procedures"), which are attached as

Exhibit B hereto, for the sale of either (a) certain loan assets relating to a luxury hotel and retail complex[1] located in Boston, Massachusetts (the "Loan Assets"), or (b) the operations and hard assets of the hotel and retail segments of the complex, which are currently owned by limited partnerships which are indirect subsidiaries of IBRC (the "Operational Assets" and collectively with the Loan Assets, the "Assets"); (ii) applying section 365 of the Bankruptcy Code to the Chapter 15 Case for purposes of this Motion; (iii) approving the form and manner of notice of all procedures, protections, schedules, and agreements; (iv) establishing procedures for the assumption and assignment of executory contracts, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); and (v) scheduling a hearing (the "Sale Hearing") to approve such sale (the "Sale Transaction").  Further, in the event that a Sale Hearing is held pursuant to the Bidding Procedures, the Foreign Representatives also hereby move the Court, pursuant to Bankruptcy Code sections 105, 363, 365, 1520, and 1521 and Bankruptcy Rules 2002, 6004, and 6006, for entry of an order (the "Sale Order")[2] (i) approving the sale of either the Loan Assets or the Operational Assets free and clear of all liens, claims, interests, and encumbrances (the "Encumbrances"), except to the extent set forth in the Sale Agreement[3] (as defined herein), (ii) authorizing the assumption and assignment of certain executory contracts, and (iii) granting related relief.  In support of the Motion, the Foreign Representatives rely on the *Declaration of Kieran Wallace In Support of Foreign Representatives' Motion for Orders: (A)(I) Establishing Bidding Procedures Relating to the Sale of Certain Assets Relating to the Mandarin Oriental Boston, (II) Applying Section 365 of the Bankruptcy Code for Purposes of this Motion,*

---

[1]    The luxury hotel and retail complex is currently operated as the Mandarin Oriental Boston.

[2]    The form of Sale Order will be filed with the Court, but not served, no later than August 3, 2015.

[3]    The Bidding Procedures provide that all bids for the Assets must be based on a form sale agreement (the "Form Sale Agreement"), which will be filed with the Court, but not served, no later than August 3, 2015.

*(III) Approving the Form and Manner of Notice of All Procedures, Protections, Schedules, and Agreements, (IV) Establishing Procedures Relating to the Assumption and Assignment of Certain Executory Contracts, and (V) Scheduling a Hearing to Consider the Proposed Sale, and (B)(I) Approving the Sale of Such Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts, and (III) Granting Related Relief* filed concurrently herewith (the "Wallace Declaration") and respectfully represent as follows:

## BACKGROUND

### I.    General Background

1.      IBRC is the successor of Anglo Irish Bank Corporation Limited and Irish Nationwide Building Society, two financial institutions which were both heavily exposed to the property market, primarily in Ireland.  Following the passage of the Irish Bank Resolution Corporation Act 2013 (the "IBRC Act") in February 2013, the Finance Minister issued a Special Liquidation Order placing IBRC into special liquidation (the "Irish Proceeding") and appointing the Foreign Representatives as IBRC's joint special liquidators. In connection with the wind-down of IBRC and the recovery and administration of its assets globally, the Foreign Representatives commenced the above-captioned chapter 15 case (the "Chapter 15 Case") by filing their *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* [Docket No. 3], seeking recognition of the Irish Proceeding as a foreign main proceeding under chapter 15 of Bankruptcy Code.  On December 18, 2013 the Court entered the Order Granting Recognition of Foreign Main Proceeding and Related Relief [Docket No. 187] (the "Recognition Order").

II.    **The Assets**

2.    IBRC's predecessors routinely made both commercial and residential loans, and as a result IBRC holds a commercial loan book, a mortgage loan book, and a portfolio of certain commercial and residential properties. Wallace Decl., ¶ 5. Certain of IBRC's assets are located within the territorial jurisdiction of the United States. Id. In order to maximize the value of its loan assets, IBRC has engaged in the process of selling its assets by dividing such assets into portfolios and marketing each portfolio individually. Id. at ¶ 7.

3.    IBRC holds various interests in a luxury hotel and retail complex located in the Back Bay area of Boston, Massachusetts. Id. at ¶ 8. The complex is currently operated as the Mandarin Oriental Boston through a series of management agreements (detailed below). Id. The complex is comprised of three different groups of assets: a luxury hotel, retail spaces, and condominium units. Id. Each group of assets is owned by a separate limited partnership entity. Id. As detailed further below, IBRC serves a lender to these limited partnership entities under a 2008 loan agreement, and also indirectly owns these three limited partnership entities due to a 2010 assignment in lieu of foreclosure transaction involving another borrower under a separate mezzanine loan. Id.

4.    The Loan Assets. In 2008, Anglo Irish Bank Corporation Limited ("Anglo Irish"), IBRC's predecessor, entered into a Construction and Term Loan Agreement, dated as of August 15, 2008 (together with all related loan and security documentation, and as amended or supplemented from time to time, the "Loan Agreement") with borrowers CWB Holdings Limited Partnership, CWB Hotel Limited Partnership, CWB Retail Limited Partnership, and CWB Apartments Limited Partnership (each a "Borrower" and collectively the "Borrowers"). Id. at ¶ 9. Anglo Irish served as agent and lender under the Loan Agreement. Id. The loan, which remains outstanding, is secured by certain assets of the Borrowers. Id. The loan is currently in

default, and the Borrowers periodically pay net operating cash generated by the Operational

Assets to IBRC as agent and lender, pursuant to the terms of the Loan Agreement.  Id.

5.    The Operational Assets.  Anglo Irish also entered into a separate loan on October

6, 2008 with certain affiliates of the Borrowers (the "Affiliates"), by which Anglo Irish loaned a

principal amount of $8,000,000.00 to such affiliates (the "Mezzanine Loan").  Id. at ¶ 10.  The

Mezzanine Loan was secured by the Affiliates' partnership interests in a limited partnership

entity which is the indirect parent company of the Borrowers.  Id.  The Mezzanine Loan fell into

default, and on April 30, 2010 the Affiliates and Anglo Irish completed a transaction which

effectively allowed the Affiliates to withdraw from the limited partnership entity and transfer

their partnership interests therein to affiliates of Anglo Irish utilizing a deed in lieu of

foreclosure.  Id.  The limited partnership entity in turn owns partnership interests in the three

operational limited partnerships which hold the hotel assets (the "Hotel Assets"), the retail assets

(the "Retail Assets"), and the condominium assets associated with the complex.  Id.

6.    The Condominium Units.  IBRC is seeking to sell its interests solely in the hotel

and retail operations of the complex.  Id. at ¶ 11.  In attempting to generate the highest value for

the assets, IBRC determined to market the condominium units to interested purchasers directly

through professional brokers, consistent with this Court's *Order Authorizing and Approving*

*Procedures for the Sale or Transfer of De Minimis Assets Free and Clear of Liens, Claims,*

*Interests, and Encumbrances Without Further Court Order* [Docket No. 332].  Id.

**III.    The Mandarin Oriental Management Agreements**

7.    The Hotel Assets are currently managed by certain entities affiliated with the

Mandarin Oriental Hotel Group (the "Mandarin Oriental Management Entities") pursuant to two

separate management agreements: (i) that certain Offshore Management Agreement by and

between CWB Hotel Limited Partnership (previously CWB Hotel LLC) and Mandarin Oriental

Overseas Management Limited dated March 5, 2003, as amended; and (ii) that certain Onshore

Management Agreement by and between CWB Hotel Limited Partnership (previously CWB

Hotel LLC) and Mandarin Oriental Management (USA) Inc. dated March 5, 2003, as amended

(collectively, the "Management Agreements").  Wallace Decl., ¶ 12.  The Retail Assets are

separately managed, and are not affiliated with the Mandarin Oriental Management Entities.  Id.

The Management Agreements each have a term of 20 years, and require the payment of certain

management fees to the Mandarin Oriental Management Entities.  Id. at ¶ 13.

        8.     The Management Agreements contain a right of first offer provision (the "Right

of First Offer") in favor of the Mandarin Oriental Management Entities in the event that the

Hotel Assets are to be sold or transferred to a third party.  Id.  IBRC intends to abide by the

provisions of the Right of First Offer with respect to any bid which may be designated as the

highest or otherwise best bid for the Hotel Assets following the sale process.  Id.  However, the

Right of First Offer specifically carves out the transfer of a mortgage upon the hotel, and

therefore it is the belief of the Special Liquidators, upon consultation with their advisors, that a

transfer of the Loan Assets would not be subject to the Right of First Offer.  Id. at ¶ 14.

Furthermore, it is the belief of the Special Liquidators, following consultation with their

advisors, that transfer of the Loan Assets would give the transferee certain foreclosure rights

with respect to the Borrowers, and that a foreclosure would have the effect, among other things,

of terminating the Management Agreements.  Id.  Finally, it should be noted that the

Management Agreements are subject to termination by the Mandarin Oriental Management

Entities in the event of a sale of the Hotel Assets.  Id.  The Special Liquidators make no

representations or warranties with respect to the Assets, except as set forth in any final and fully

executed Sale Agreement, and expressly disclaim any legal advice or opinion as to the rights of any party to foreclose upon, and/or the consequences of foreclosure upon, the Loan Assets.  Id.

## IV.    The Proposed Sale Process and Bidding Procedures

9.      The Special Liquidators have determined to auction the Loan Assets and the Operational Assets in a parallel asset sale process in an effort to maximize their value for the benefit of IBRC and its creditors.  Wallace Decl., ¶ 15.  Accordingly, the Special Liquidators have worked with their advisors to formulate the Bidding Procedures, which are designed to maximize value for the benefit of the Debtor, while ensuring an orderly sale process.  Id.  The Special Liquidators believe that the Bidding Procedures afford the Debtor a sufficient opportunity to pursue a sale process that will maximize the value of IBRC's assets.  Id.

10.     Through the Bidding Procedures, IBRC is offering either the Loan Assets or the Operational Assets for sale.  Id. at ¶ 17.  IBRC will not sell the Loan Assets and the Operational Assets to separate parties; instead, IBRC will sell either the Loan Assets or the Operational Assets in a transaction which generates the highest or otherwise best overall value for IBRC and its creditors.  Id.  The Bidding Procedures are designed to give IBRC maximum flexibility to sell either the Loan Assets or the Operational Assets, and furthermore to sell the Hotel Assets and Retail Assets either to the same party or separate parties, in a transaction that will maximize value for the benefit of IBRC and all other parties in interest.  Id.  The Special Liquidators and IBRC specifically reserve the right to terminate the sale process with respect to either the Loan Assets or the Operational Assets, if the Special Liquidators determine, in an exercise of their business judgment, that the sale process for either set of Assets is unlikely to generate significant value for the benefit of IBRC, its affiliates, and its creditors.  Id. at ¶ 14.

11.     If the highest or otherwise best bid obtained at the conclusion of the Auction includes a bid for the Hotel Assets, then IBRC will cause the Borrowers to execute a form of sale

agreement with the Successful Bidder, and will provide notice to the Mandarin Oriental Management Entities of the proposed sale transaction, as required under the Management Agreements.  <u>Id.</u> at ¶ 18.  In the event that such a notice is given, the Mandarin Oriental Management Entities will then have a thirty (30) day period to deliver written notice to the Borrowers accepting or rejecting the offer to purchase the Hotel Assets for total consideration equal to or exceeding the purchase price offered by the Successful Bidder.  <u>Id.</u>  In the event that the Mandarin Oriental Management Entities reject such offer, then IBRC will proceed to seek this Court's approval of a sale of the Hotel Assets to the Successful Bidder.  <u>Id.</u>

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1410.

14.     The statutory predicates for the relief requested herein are sections 105, 363, 365, 1520, and 1521 of the Bankruptcy Code, Rules 2002, 6004, 6006, and 9014 of the Bankruptcy Rules, and Rule 6004-1 of the Local Rules.

## RELIEF REQUESTED

15.     By this Motion, the Foreign Representatives first seek entry of the Bidding Procedures Order, which will authorize and approve, among other things: (i) the Bidding Procedures for conducting the auction for the sale of the Assets; (ii) the application of section 365 of the Bankruptcy Code to the Chapter 15 Case for purposes of this Motion; (iii) the form and manner of notice of all procedures, protections, schedules, and agreements; (iv) the Assumption and Assignment Procedures; and (v) the scheduling of the Sale Hearing to approve the Sale Transaction.

16.    Second, in the event that the Sale Hearing is necessary in accordance with the Bidding Procedures, at the Sale Hearing, the Foreign Representatives will seek entry of a Sale Order that will authorize and approve, among other things: (i) the sale of the Assets free and clear of the Encumbrances, except to the extent set forth in the any final, fully executed form of sale agreement (the "Sale Agreement"), (ii) the assumption and assignment of certain executory contracts, and (iii) any additional related relief.

## BASIS FOR RELIEF

17.    The Foreign Representatives believe that the Sale Transaction and the Bidding Procedures will generate the highest and best value for the Debtor's assets and for the Debtor's creditors under the circumstances.  Absent the relief requested herein, the Debtor and its creditors will potentially suffer significant harm.  The Debtor is seeking to liquidate the Assets as part of its overall wind-down and liquidation through the Irish Proceeding.  In order to fully inform bidders as to the status of the Assets and related documentation, the Special Liquidators will provide documentation relating to the Assets in a virtual data room open to Potential Bidders who fulfill the access requirements in the Bidding Procedures (summarized below, see "Access to Diligence Materials"), including providing an executed confidentiality agreement.  Such documentation will include, among other things, facility letters, general loan terms, guaranties, security agreements, payment records, deeds in lieu of foreclosure, transfer documentation with respect to the Operational Assets, amendments to any of the foregoing, and any additional documentation that the Special Liquidators may deem appropriate following consultation with their advisors.

I.     **The Bidding Procedures[4]**

18.     Certain key terms of the Bidding Procedures are highlighted as follows pursuant

to Local Bankruptcy Rule 6004-1(c):

- **Access to Diligence Materials:**  To participate in the Bidding Process, a Potential Bidder must submit to the Notice Parties: (i) an executed confidentiality agreement, in form and substance satisfactory to the Special Liquidators, in the form attached as <u>Exhibit A</u> to the Bidding Procedures; and (ii) an executed letter acknowledging receipt of these Bidding Procedures and agreeing to accept and be bound by the provisions therein, in the form attached <u>Exhibit B</u> to the Bidding Procedures.

- **Bid Deadline:**  Any Potential Bidder that wishes to participate in the Bidding Process must deliver written copies of its bid materials so as to be received by the Notice Parties no later than 5:00 p.m. (prevailing Eastern Time) on September 3, 2015, or such other date or time as the Special Liquidators in consultation with their advisors may deem appropriate (the "<u>Bid Deadline</u>").

- **Auction Qualification Process:**  Any Potential Bidder that wishes to participate in the Auction must submit the information listed below, and the Special Liquidators must determine that such Potential Bidder is reasonably likely (based on financial information submitted by the Potential Bidder, the Potential Bidder's financial wherewithal to close a sale of the Assets, experience, and other non-monetary considerations) to submit a *bona fide* offer, and be able to consummate a Sale Transaction.

  o   <u>Executed Agreement:</u>  A fully executed proposed form of sale agreement, substantially in the form of the Form Loan Sale Agreement or the Form Asset Sale Agreement, as applicable, together with all exhibits and schedules thereto, and any necessary ancillary agreements, as well as copies of materials marked to show the proposed amendments and modifications to the Form Loan Sale Agreement or Form Asset Agreement.  The Form Loan Sale Agreement or Form Asset Sale Agreement must indicate the proposed purchase price for the Loan Assets or the Operational Assets, as applicable, including the form of consideration of such proposed purchase price, and must be fully executed by a properly authorized corporate officer.

  o   <u>Sale Order</u>:  A form of sale order, substantially in the form of the Form Loan Sale Order or Form Asset Sale Order, as well as a copy marked to show the

---

[4]     The following summary is qualified in its entirety by reference to the provisions of the Bidding Procedures.  In the event of any inconsistencies between the provisions of the Bidding Procedures and the terms herein, the terms of the Bidding Procedures shall govern.  Unless otherwise defined in the summary set forth in the accompanying text, capitalized terms shall have the meanings ascribed to them in the Bidding Procedures. Unless otherwise set forth herein, the Bidding Procedures for the Loan Assets are the same as those for the Operational Assets.

amendments and modifications to the Form Loan Sale Order or Form Asset Sale Order.

o   <u>Disclosure of Identity (Loan Assets):</u>  A letter setting forth the identity of the Potential Bidder and full disclosure of the identity of each entity that will be sponsoring or participating in the proposed transaction, the contact information for such Potential Bidder, full disclosure of the direct and indirect owners of the Potential Bidder and their principals, and the complete terms of any such sponsorship or participation, and the identity, experience, and credentials of the Potential Bidder's proposed management or operating agent.

o   <u>Disclosure of Identity (Operational Assets):</u>  A letter setting forth the identity of the Potential Bidder and full disclosure of the identity of each entity that will be sponsoring or participating in the proposed transaction, the contact information for such Potential Bidder, full disclosure of the direct and indirect owners of the Potential Bidder and their principals, and the complete terms of any such sponsorship or participation.

o   <u>Irrevocable Bid:</u>  A letter stating that the bid is irrevocable until the earlier of (1) the first Business Day after the applicable Assets have been sold pursuant to the closing of the sale transaction approved by the Bankruptcy Court, and (2) sixty (60) days following the Sale Hearing; provided, however, that if such bid is selected as the Successful Bid or the Backup Bid, such bid shall remain irrevocable until the closing of the successful bid or backup bid, as the case may be.

o   <u>Evidence of Financial Wherewithal:</u>  Specific indication of the anticipated sources of capital for such Potential Bidder and evidence of a firm, irrevocable commitment for all required funding and/or financing from a creditworthy bank or financial institution to consummate the proposed transaction, or such other form of financial disclosure that will allow the Special Liquidators and their advisors, including the Consultant, to make, in their reasonable business or professional judgment, a determination as to the Potential Bidder's financial and other capabilities to consummate an acquisition of the Assets.

o   <u>Deposit:</u>  Payment of the Deposit, in an initial amount of 10% of the total proposed purchase price.

o   <u>Corporate Authority:</u>  Evidence, in form and substance reasonably satisfactory to the Special Liquidators, of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the transaction contemplated by the bid.

o   <u>Debt or Equity Commitment:</u>  If the Potential Bidder is an entity newly formed for the purpose of the transaction, the bid shall contain an equity or debt commitment letter from the parent entity or sponsor, which is satisfactory to the

Special Liquidators, in their sole discretion, that names the Debtor and the Special Liquidators as third party beneficiaries of any such commitment letter with recourse against such parent entity or sponsor.

o   Executory Contracts (Loan Assets):  An acknowledgement and representation that the bidder will assume the obligations of the Debtor under the executory contracts proposed to be assigned and, to the extent applicable, in compliance with section 365 of the Bankruptcy Code (or identifies with particularity which of such contracts the bidder wishes not to assume, or alternatively which additional executory contracts the bidder wishes to assume), contains full details of the Potential Bidder's proposal for the treatment of related cure costs, if any, and it identifies with particularity any executory contract the assumption and assignment of which is a condition to closing.

Evidence of the Potential Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), which includes providing adequate assurance of the Potential Bidder's ability to perform the contracts proposed in its bid to be assumed by the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts.

o   Executory Contracts (Operational Assets):  An acknowledgement and representation that the bidder will assume the obligations of the Debtor under any and all executory contracts and unexpired leases related to the Operational Assets including, among others, the Management Agreements, and in compliance with section 365 of the Bankruptcy Code contains full details of the Potential Bidder's proposal for the treatment of related cure costs, if any.

o   Nonreliance:  An acknowledgement that the Potential Bidder: (1) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets to be acquired and liabilities to be assumed in making its bid; (2) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by the Debtor, the Special Liquidators, or any of their respective advisors, except as expressly stated in the sale agreement submitted by it; (3) has had an opportunity to conduct any and all required due diligence prior to making its bid; (4) is a sophisticated party capable of making its own assessments in respect of making its bid; and (5) has had the benefit of independent legal advice in connection with its bid.

o   No Break-up Fee:  Bid materials must not contain any request or entitlement to any break-fee, expense reimbursement, or similar type of payment.  Further, by submitting a bid for the Assets, a Potential Bidder shall be deemed to waive its right to pursue a substantial contribution claim or other form of administrative

expense claim under section 503 of the Bankruptcy Code in connection with the Bidding Process or the sale of the Assets.

o   No Contingencies:  Bid materials must not contain any condition to closing any sale of the Assets based upon (1) the outcome of unperformed due diligence by the Potential Bidder, and/or (2) the Potential Bidder obtaining any financing capital.

• **Qualified Bid:**  No later than September 8, 2015, after a Potential Bidder delivers the required bid materials listed above, the Special Liquidators shall determine whether the Potential Bidder is a Qualified Bidder, and shall so inform the Potential Bidder.  A bid timely submitted by a Qualified Bidder shall constitute a Qualified Bid.

• **Auction:**  If one or more Qualified Bids for either the Loan Assets or the Operational Assets are received by the Bid Deadline, the Special Liquidators will conduct an auction for such Assets to determine the highest or otherwise best Qualified Bid.  If only one Qualified Bid for either the Loan Assets or the Operational Assets is received by the Bid Deadline, the Special Liquidators reserve the right to cancel the scheduled auction with respect to the Loan Assets or the Operational Assets, as applicable, and deem the sole Qualified Bid the highest or otherwise best bid for such Assets.

The Special Liquidators intend to conduct an auction for the Assets at the offices of Skadden, Arps, Slate, Meagher & Flom, LLP, 4 Times Square, New York, New York 10036 at 10:00 a.m. (prevailing Eastern time) on September 11, 2015, or such other place and time as the Debtor shall notify all Qualified Bidders who have submitted Qualified Bids and expressed their intent to participate in the Auction.

• **Auction Procedures:**  The Auction shall be governed by the following procedures:

o   Prior to the Auction, the Consultant will provide copies of the Qualified Loan Bid which the Special Liquidators, with the advice of the Consultant, have determined to be the Starting Loan Bid to all Auction Bidders for such assets, and shall likewise provide copies of the Qualified Operational Bid which the Special Liquidators, with the advice of the Consultant, have determined to be the Starting Operational Bid to all Auction Bidders for such assets;

o   Only representatives of the Auction Bidders, the Debtor, the Special Liquidators, and such other persons as permitted by the Special Liquidators (and the advisors to each of the foregoing entities) are entitled to attend the Auction in person;

o   Only the Auction Bidders will be entitled to make any subsequent bids at the Auction; provided, however, that in the event that any Qualified Bidder elects not to attend and/or participate in the Auction, such Auction Bidder's Qualified Bid, as applicable, shall nevertheless remain fully enforceable

against such Auction Bidder if it is selected as the successful bid or the backup bid at the conclusion of the Auction;

o   All Subsequent Bids presented during the Auction shall be made and received in one room on an open basis, unless otherwise determined by the Special Liquidators, with the advice of the Consultant. All Auction Bidders will be entitled to be present for all Subsequent Bids at the Auction with the understanding that the true identity of each Auction Bidder at the Auction will be fully disclosed to all other Auction Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Auction Bidders throughout the entire Auction;

o   All Auction Bidders must have at least one individual representative with authority to bind such Auction Bidder present in person at the Auction;

o   Each Auction Bidder may pass on the opportunity to submit a Subsequent Bid once in the Auction for the Loan Assets and once in the Auction for the Operational Assets without penalty.  Any Auction Bidder choosing to pass a second time on the opportunity to submit a Subsequent Bid in either Auction will be excluded from participating in the balance of the Auction for the Loan Assets or the Operational Assets, as applicable, and the last bid from such Auction Bidder for the Loan Assets or the Operational Assets, as applicable, will remain binding upon and fully enforceable against the Auction Bidder;

o   The Special Liquidators may require any Auction Bidder to submit, as part of its Subsequent Bid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Special Liquidators), demonstrating such Auction Bidder's ability to close the transaction proposed by the Subsequent Bid;

o   The Special Liquidators reserve the right, in their reasonable business judgment, to make one or more adjournments in the Auction of no more than 24 hours, to among other things (1) facilitate discussions between the Special Liquidators and the Auction Bidders; (2) allow the individual Auction Bidders to consider how they wish to proceed; (3) consider and determine the current highest and best offer at any given time in the Auction; and (4) give Auction Bidders the opportunity to provide the Debtor with such additional evidence as the Special Liquidators, in their reasonable business judgment, may require that the Auction Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing overbid amount;

o   No creditor shall be entitled to credit bid, in whole or in part;

o   The Auction shall continue until the Special Liquidators determine, subject to the approval of the Bankruptcy Court, that the Debtor has received the highest

or otherwise best offer for the Loan Assets from among the Qualified Bidders for the Loan Assets (such offer, the "Prevailing Loan Bid" and such bidder, the "Prevailing Loan Bidder"), and that the Debtor has likewise received the highest or otherwise best offer for the Operational Assets from the Qualified Bidders for the Operational Assets (such offer, the "Prevailing Operational Bid" and such bidder, the "Prevailing Operational Bid");

o No bids shall be considered after the closing of the Auction.

- **Overbids (Loan Assets):** Bidding for the Loan Assets at the Auction will begin with the Starting Bid for the Loan Assets and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by an Auction Bidder (a "Subsequent Bid") that the Special Liquidators determine, is (1) for the first round, a higher or otherwise better offer than the Starting Bid for the Loan Assets, and (2) for subsequent rounds, a higher or otherwise better offer than the Leading Bid for the Loan Assets; in each case by at least the Minimum Incremental Overbid.  Each bid for the Loan Assets at the Auction shall provide net value to the Debtor of at least U.S. $1,500,000 (the "Minimum Incremental Overbid") over the Starting Bid or the Leading Bid for the Loan Assets, as the case may be; provided, however, that the Special Liquidators shall retain the right to modify the increment requirements at the Auction in order to maximize value, and provided, further that the Special Liquidators, in determining the net value of any incremental bid shall not be limited to evaluating the incremental dollar value of such bid and may consider other factors which they will determine in their sole discretion and announce at the Auction.  After the first round of bidding and between each subsequent round of bidding, the Special Liquidators shall announce the bid (including the value and material terms thereof) that it believes to be the highest or otherwise best offer (the "Leading Bid") for the Loan Assets.  A round of bidding will conclude after each Auction Bidder has had the opportunity to submit a Subsequent Bid for the Loan Assets after announcement of the Leading Bid for the Loan Assets.

- **Overbids (Operational Assets):** Bidding for the Operational Assets at the Auction will begin with the Starting Bid for the Operational Assets and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid is submitted by an Auction Bidder that the Special Liquidators determine, is (1) for the first round, a higher or otherwise better offer than the Starting Bid for the Operational Assets, and (2) for subsequent rounds, a higher or otherwise better offer than the Leading Bid for the Operational Assets; in each case by at least the Minimum Incremental Overbid.  Each bid for the Operational Assets at the Auction shall provide net value to the Debtor of at least the Minimum Incremental Overbid over the Starting Bid or the Leading Bid for the Operational Assets, as the case may be; provided, however, that the Special Liquidators shall retain the right to modify the increment requirements at the Auction in order to maximize value, and provided, further that the Special Liquidators, in determining the net value of any incremental bid shall not be limited to evaluating the incremental dollar value of such bid and may consider other factors which they will determine in their sole discretion and announce at the Auction.  After the first round of bidding and between

15

each subsequent round of bidding, the Special Liquidators shall announce the bid (including the value and material terms thereof) that it believes to be the Leading Bid for the Operational Assets. A round of bidding will conclude after each Auction Bidder has had the opportunity to submit a Subsequent Bid for the Operational Assets after announcement of the Leading Bid for the Operational Assets.

- **Backup Bidder (Loan Assets):**  Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder for the Loan Assets with the next highest or otherwise best bid for the Loan Assets at the Auction, as determined by the Special Liquidators in the exercise of their business judgment, will be designated as the backup bidder for the Loan Assets (the "Backup Loan Bidder"). The designation of the Backup Loan Bidder by the Special Liquidators is subject to the approval of the Bankruptcy Court at the Sale Hearing. If the Backup Loan Bid is approved by the Bankruptcy Court, then the Backup Loan Bidder shall be required to keep its final bid at the Auction (the "Backup Loan Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the sale order (the "Backup Loan Bid Expiration Date"), or (ii) the closing of the transaction with the Successful Bidder.

  Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction[5] and the Backup Loan Bid has been approved by the Bankruptcy Court at the Sale Hearing, the Backup Loan Bidder will be deemed to have the new prevailing bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Loan Bidder. In such case of a breach or failure to perform on the part of such Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor. The Debtor and the Special Liquidators specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Loan Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

- **Backup Bidder (Operational Assets):**  Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder for the Operational Assets with the next highest or otherwise best bid for the Operational Assets at the Auction, as determined by the Special Liquidators in the exercise of their business judgment, will be designated as the backup bidder for the Operational Assets (the "Backup Operational Bidder"). The designation of the Backup Operational Bidder by the Special Liquidators is subject to the approval of the Bankruptcy Court at the Sale Hearing. If the Backup Operational Bid is approved by the Bankruptcy Court, then the Backup Operational Bidder shall be required to keep its final bid at the Auction (the

---

[5]  For the avoidance of doubt, at any time following the termination date set forth in the applicable Successful Bid or other failure of the Successful Bidder to close or consummate the transaction set forth in the applicable Successful Bid, the Special Liquidators may, at their sole discretion, choose to consummate the transaction with the Backup Loan Bidder or the Backup Operational Bidder, as applicable.

"Backup Operational Bid") open and irrevocable until the earlier of (i) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the sale order (the "Backup Operational Bid Expiration Date"), or (ii) the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved transaction  and the Backup Operational Bid has been approved by the Bankruptcy Court at the Sale Hearing, the Backup Operational Bidder will be deemed to have the new prevailing bid, and the Debtor will be authorized, without further order of the Bankruptcy Court, to consummate the transaction with the Backup Operational Bidder.  In such case of a breach or failure to perform on the part of such Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtor.  The Debtor and the Special Liquidators specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Operational Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

- **Right of First Offer (Operational Assets):**  If, following the Auction, the Debtor and the Special Liquidators, following consultation with their advisors, determine that the highest or otherwise best bid for the Assets includes a bid for the Hotel Assets, then the Debtor and the Special Liquidators will execute a form of Asset Sale Agreement subject to the Right of First Offer.  On September 14, 2015, the Debtor will cause the Borrowers to deliver a Right of First Offer notice under the Management Agreements to the Mandarin Oriental Management Entities.  On or before October 14, 2015 (thirty days after delivery of the Right of First Offer notice), the Mandarin Oriental Management Entities must deliver a responsive Election Notice to the Borrowers indicating whether the Mandarin Oriental Management Entities will: (i) accept the offer, and agree to acquire the Hotel Assets upon the terms and conditions set forth in the Asset Sale Agreement, or (ii) reject the offer and permit the Borrowers to transfer the Hotel Assets upon the terms and conditions set forth in the Asset Sale Agreement.  On or before October 15, 2015, the Special Liquidators shall file, but not serve, a notice with this Court stating whether an Election Notice has been delivered, whether the Mandarin Oriental Management Entities are choosing to exercise the Right of First Offer, and the identity of the Purchaser.

- **Reservation of Rights:**  The Debtor and the Special Liquidators reserve the right as they may reasonably determine to be in the best interest of the Debtor: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any Qualified Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Debtor and its creditors; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions with respect to all potential bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (ix) modify the Bidding Procedures and implement additional procedural rules that the Special Liquidators

determine, in their business judgment, will better promote the goals of the bidding process and discharge the Special Liquidators' and the Debtor's fiduciary duties and are not inconsistent with any Bankruptcy Court order.

## II.    Notice Procedures

### A.    Notice of Sale Transaction and Sale Hearing

19.    Within five (5) business days after the entry of the Bidding Procedures Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtors (or their agents) shall serve the Bidding Procedures Order and the Bidding Procedures by first-class mail, postage prepaid, upon (i) the United States Trustee; (ii) all counterparties to the Loan Assets; (iii) all other known parties located in the United States who claim interests in or liens upon the Loan Assets or the Operational Assets; and (iv) all parties who have requested notice in this Chapter 15 Case. Such notice shall be sufficient and proper notice of the Sale Transaction with respect to known interested parties.

### B.    Sale Notice

20.    On the Mailing Date or as soon thereafter as practicable, the Debtors (or their agents) shall serve by first-class mail, postage prepaid, the sale and sale hearing notice (the "Sale Notice"), substantially in the form attached hereto as Exhibit C, upon all other known creditors of the Debtors.  The Sale Notice shall set forth the date and time of the Auction and the Sale Hearing, and will also set forth the deadline for objecting to the Sale Transaction.

## III.    Assumption and Assignment Notice Procedures for Assumed Contracts

21.    Certain of the loan documents and other contracts or agreements relating to the Assets may be executory contracts or unexpired leases within the meaning of section 365 of the Bankruptcy Code (such documents, the "Contracts").   To facilitate the Sale and the assumption and assignment of the Contracts, free and clear of Liens, the Debtor proposes the following Assumption and Assignment Procedures for notifying non-debtor counterparties to the Contracts

18

of the assumption and assignment of the Contracts, and any proposed cure amounts in connection with the same.

22.     On the Mailing Date, the Debtor will serve the a copy of the notice of assumption, assignment and cure, substantially in the form attached hereto as <u>Exhibit D</u> (the "<u>Notice of Assignment and Cure</u>") upon each counterparty to a Contract, identifying each such Contract being assumed and the Debtor's good faith estimate of the cure costs (collectively, the "<u>Cure Amounts</u>") necessary to assume such Contracts (to the extent that such Contracts constitute executory contracts) pursuant to section 365 of the Bankruptcy Code.  The Debtor believes that there are no outstanding Cure Amounts associated with any of the Contracts or otherwise in respect of the Assets.  The Notice of Assignment and Cure notifies each Contract counterparty that the Contracts will be assumed and assigned to the Purchaser upon closing of the Sale, and will also inform the Contract counterparty that if it disagrees with the Cure Amount set forth in the Notice of Assignment and Cure, it must file a formal objection (each, a "<u>Cure Objection</u>") by the deadline set forth therein (the "<u>Cure Objection Deadline</u>").  The Debtor requests that the Court set the Cure Objection Deadline to be 4:00 p.m. (prevailing Eastern time) on the seventh calendar day preceding the Sale Hearing.

23.     The Notice of Assignment and Cure further informs each loan counterparty that (a) unless it files with this Court a Cure Objection no later than the Cure Objection Deadline, and (b) serves a copy of such Cure Objection so as to be received no later than the Cure Objection Deadline, then such loan counterparty will be (i) deemed to have agreed that no Cure Amount is owed under Bankruptcy Code section 365 to cure all defaults or pay all actual pecuniary losses under the applicable Contract, (ii) barred from asserting that a different amount is necessary to cure all defaults and pay all actual pecuniary losses under such Contract, and (iii) deemed to

19

have waived its right to collect additional amounts under such Contract for any pre-petition period.

24.     Copies of any Cure Objections must be served on: (i) counsel for the Foreign Representatives: Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071, Attn: Van C. Durrer, II, Esq.; and (ii) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801,  Attn: David L. Buchbinder, Esq.

25.     In the event that the Debtor and the Contract counterparty cannot consensually resolve a Cure Objection, the Cure Objection shall be heard at the Sale Hearing.  During the Sale Hearing, the Debtor shall (a) present evidence necessary to demonstrate adequate assurance of future performance by the Purchaser, and (b) request entry of an order approving the assumption and assignment of the Contracts to the Purchaser.  The Debtor may, in its sole discretion, seek authority to assume and assign the Contracts at the Sale Hearing and continue adjudication on any related Cure Objection to a separate, subsequent hearing.

## APPLICABLE AUTHORITY

26.     IBRC commenced the instant Chapter 15 Case to obtain recognition of the Irish Proceeding as a foreign main proceeding, in order to ensure an orderly administration of IBRC's assets while also maximizing the value of IBRC's assets for the benefit of its creditors, which is the paramount goal of any proposed sale of property of a debtor.  In re Dura Automotive Sys., Inc., 2007 Bankr. LEXIS 2764, at *253 (Bankr. D. Del. 2007) ("The paramount goal in any proposed sale of property … is to maximize the proceeds received [from such sale]").

## I.    Section 363 of the Bankruptcy Code Applies to the Proposed Sale

27.    The relief requested herein is authorized by sections 105(a), 363, 1520, and 1521 of the Bankruptcy Code.  Section 1520 of the Bankruptcy Code provides, in pertinent part, that "[u]pon recognition of a foreign proceeding that is a foreign main proceeding, [section 363 of the Bankruptcy Code applies] to a transfer of interest of the debtor in property that is within the territorial jurisdiction of the United States."  11 U.S.C. § 1520(a)(2).  Section 363(b)(1) of the Bankruptcy Code, in turn, provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease [its property], other than in the ordinary course of business."  11 U.S.C. § 363(b)(1).

28.    This Court has already recognized the Irish Proceeding as a foreign main proceeding, pursuant to the Recognition Order.  See Recognition Order at ¶ 1.  The Recognition Order specifically states, "[f]or the avoidance of doubt, section 363 of the Bankruptcy Code applies to any sale by the Foreign Representatives of assets of the Debtor that are within the territorial jurisdiction of the United States, and all parties in interest reserve all rights to oppose any such sale."  Id. at ¶ 4.  In addition, the Recognition Order states "[t]he provisions of section 1520 of the Bankruptcy Code shall be effective immediately upon the entry of this Order."  Id. at ¶ 3.  Therefore, section 363 of the Bankruptcy Code applies to this Chapter 15 Case.

## II.    Section 365 of the Bankruptcy Code Should Be Applied to this Chapter 15 Case for Purposes of this Motion

29.    The Recognition Order expressly grants leave to the Debtor to apply to this Court "as necessary for additional relief under sections 1507 and 1521 of the Bankruptcy Code, or for any other relief otherwise available."  Recognition Order at ¶ 5.  As such, the Debtor requests that this Court apply section 365 of the Bankruptcy Code to the instant Chapter 15 Case for

purposes of this Motion, in order to allow the Debtor to assume the Contracts, to the extent that any Asset is determined to be an executory contract, and satisfy related Cure Amounts, if any.

30.     Section 1521 of the Bankruptcy Code permits the court, upon recognition of a foreign proceeding, to grant any appropriate relief with limited exceptions not applicable here, where such relief is "necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors."  11 U.S.C. § 1521(a).  In addition, section 1507 of the Bankruptcy Code sets forth certain factors for the court to consider in deciding whether to provide additional assistance to the foreign representative.  Such factors include, among others, "just treatment of all holders of claims against or interests in the debtor's property."  11 U.S.C. § 1507(b)(1).

31.     Application of section 365 for purposes of this Motion is consistent with, and permissible under, sections 1521 and 1507 of the Bankruptcy Code.  Specifically, application of section 365 would protect both the assets of IBRC and the interests of creditors, as the notice procedures set forth herein promote the sale of the Assets to the Purchaser and provide a procedure for Contract counterparties to address issues relating to potential Cure Amounts, to the extent that any of the Contract relating to the Assets are ultimately found to be executory contracts pursuant to the Bankruptcy Code.  Accordingly, this Court should apply section 365 of the Bankruptcy Code to this Chapter 15 Case for purposes of this Motion.

### III.    The Bidding Procedures Are Fair and Are Designed to Maximize the Value Received for the Assets

32.     As noted above, section 363 of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease [its property], other than in the ordinary course of business."  11 U.S.C. § 363(b)(1).  In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §

105(a).  The Special Liquidators believe that the Bidding Procedures are appropriate under

Bankruptcy Code sections 105 and 363 to ensure that the bidding process is fair and reasonable

and will yield the maximum value for their estates and creditors.  The Bidding Procedures

proposed herein are designed to maximize the value received for the Debtors' assets by

facilitating a competitive bidding process in which all potential bidders are encouraged to

participate and submit competing bids.  The Bidding Procedures provide potential bidders with

sufficient notice and an opportunity to acquire information necessary to submit a timely and

informed bid.  Thus, the Debtors and all parties in interest can be assured that the consideration

for the Assets will be fair and reasonable.  At the same time, the Bidding Procedures provide the

Debtors with the opportunity to consider all competing offers and to select, in their reasonable

business judgment, the highest or otherwise best offer for the Assets.

## IV.    The Proposed Sale Is a Product of IBRC's Reasonable Business Judgment

33.    A proposed sale of assets of a debtor under section 363 of the Bankruptcy Code

outside the ordinary course of business is appropriate if a court finds that the transaction

represents a reasonable business judgment on the part of the debtor.  See In re Abbotts Dairies of

Pennsylvania, Inc., 788 F.2d 143, 147-49 (3d Cir. 1986) (implicitly adopting the "sound business

judgment test"); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC), 2007 WL 7728109, at *5

(Bankr. D. Del. Aug. 15, 2007) (finding that "[t]he Debtors have demonstrated compelling

circumstances and a good, sufficient, and sound business purpose and justification for the Sale

prior to, and outside of, a plan of reorganization."); Dai-Ichi Kangyo Bank Ltd. v. Montgomery

Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999)

("In determining whether to authorize the use, sale or lease of property of the estate under

[section 363(b)], courts require the debtor to show that a sound business purpose justifies such

actions"); <u>Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991) (sale of substantially

all of debtor's assets outside of reorganization plan is appropriate when a sound business reason

justifies such a sale); <u>see also</u> <u>Comm. of Equity Sec. Holders v. Lionel Corp.</u> (<u>In re Lionel</u>

<u>Corp.</u>), 722 F.2d 1063, 1070 (2d Cir. 1983); <u>Titusville Country Club v. Pennbank</u> (<u>In re</u>

<u>Titusville Country Club</u>), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (stating that the "sound

business purpose test" is appropriate); <u>In re Mid-American Waste System</u>, Case No. 97-104

(PJW) (Bankr. D. Del. Mar. 7, 1997).

34.    Generally, courts have applied four factors in connection with the "sound business

purpose" test: (1) whether a sound business reason exists for the proposed transaction; (2)

whether fair and reasonable notice has been provided to interested persons; (3) whether the

debtor has obtained a fair and reasonable price; and (4) whether the transaction has been

proposed and negotiated in good faith.  <u>In re Titusville Country Club</u>, 128 B.R. at 399; <u>Delaware</u>

<u>& Hudson Ry.</u>, 124 B.R. at 176.  The proposed Sale Transaction satisfies all four conditions, and

accordingly the proposed Sale Transaction should be approved by this Court.

35.    The sale of the Assets is based upon the sound business judgment of IBRC and

the Special Liquidators.  IBRC believes that a sale, conducted in accordance with the competitive

process set forth in the Bidding Procedures, presents the best opportunity to realize the maximum

value of the Assets for the benefit of IBRC and its creditors.

36.    IBRC also meets the additional requirements necessary to approve a sale under

section 363 of the Bankruptcy Code.  As stated herein, the Special Liquidators will provide

adequate notice of the Sale Transaction to interested parties, and IBRC believes that the

aforementioned notice procedures are reasonable and adequate under the circumstances.

Additionally, IBRC will enter into the Sale Agreement after a lengthy and fulsome marketing

effort.  Accordingly, it is a valid exercise of IBRC's and the Special Liquidators' business

judgment to seek the relief requested by this Motion.

### V.    The Proposed Sale Satisfies the Requirements of Section 363(f) for Sales Free and Clear of Claims

37.    Under Bankruptcy Code section 363(f), a debtor may sell property free and clear

of any interest in such property of an entity other than the estate only if, among other things:

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  As indicated by the use of the disjunctive term "or," satisfaction of any one

of the five requirements listed in section 363(f) is sufficient to permit the sale of the Assets free

and clear of all interests, liens, claims, encumbrances, pledges, mortgages, security interests,

charges, options and other interests, including any right of setoff.  See Mich. Employment Sec.

Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132 (6th Cir. 1991); In

re Elliot, 94 B.R. 343 (E.D. Pa. 1988) (stating that Bankruptcy Code section 363(f) is written in

the disjunctive; the court may approve a sale "free and clear" provided that at least one of the

subsections is met).

38.    IBRC seeks authority to transfer its rights, interests and title in the Assets free and

clear of all interests, except as set forth in the Sale Agreement.  With respect to any and all

creditors that may assert an interest in the Assets, IBRC submits that, at minimum, subsections

(2) and (5) of section 363(f) apply.

39.     To the extent that any lien holder does not object to the proposed sale, that entity should be deemed to have consented to the relief sought herein, thereby satisfying Bankruptcy Code section 363(f)(2).  Any entity holding liens, claims, encumbrances and other interests on the Assets will receive notice of this Motion and the Sale Hearing.  Accordingly, all parties in interest will be given sufficient opportunity to object to the relief requested herein.  Failure to object should be deemed consent.  See Futuresource LLC v. Reuters Ltd., 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.  It could not be otherwise; transaction costs would be prohibitive if everyone who might have an interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); Hargrave v. Township of Pemberton (In re Tabone, Inc.), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)).

40.     In addition, any other lien and interest holders, to the extent known by IBRC, which might claim an interest in the Assets will be adequately protected.  Specifically, because all liens will attach to the proceeds of the Sale with the same force and effect as previously attached to the Assets (with all of IBRC's claims, defenses and objections with respect to the amount, validity, or priority of each such interest and the underlying liabilities expressly preserved), any lien holders are adequately protected and could be compelled to accept a monetary satisfaction of their interest.  See MacArthur Co. v. Johns-Manville Corp., 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is

assertable against the proceeds of the disposition."); <u>see also</u> <u>In re Riverside Inv. P'ship</u>, 674 F.2d

634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the

proceeds of the sale and discharged at the time of sale . . . .").

41.     Finally, a sale free and clear of liens and other interests is necessary to maximize

the value of the Assets.  Therefore, IBRC submits that the proposed sale should be approved free

and clear of all liens and other interests pursuant to section 363(f) of the Bankruptcy Code.

## VI.     The Purchaser is Entitled to the Protections of Section 363(m)

42.     IBRC additionally requests that the Court apply the protections provided by

section 363(m) of the Bankruptcy Code in connection with the sale.  Section 363(m) of the

Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or
> (c) of this section of a sale or lease of property does not affect the validity of a
> sale or lease under such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were stayed pending
> appeal.

11 U.S.C. 363(m).

43.     While the Bankruptcy Code does not define "good faith purchaser," courts have

stated that "the phrase encompasses one who purchases in 'good faith' and for 'value'." <u>In re</u>

<u>Abbotts Diaries</u>, 788 F.2d at 147.  Generally, parties have acted in good faith with respect to a

proposed sale if the purchase price is adequate and reasonable and the terms of the sale are

disclosed fully.  <u>Id.</u>, 788 F.2d at 149-50.  Courts have held that in order to demonstrate a lack of

good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or

an attempt to take grossly unfairly advantage [of other potential purchasers]." <u>Id.</u> (citing <u>In re</u>

<u>Rock Indus. Mach. Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978)); <u>In re Colony Hill Assocs.</u>, 111

F.3d 269, 276 (2d Cir. 1997).

44.     The Special Liquidators will present facts to demonstrate that the Sale Agreement was negotiated at arm's-length, with both parties represented by their own counsel.  Accordingly, the Special Liquidators request that the Sale Order include a provision that the Successful Bidder for the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code.  The Special Liquidators believe that providing the Successful Bidder with such protection will ensure that the maximum price will be received by IBRC for the Assets and closing of the sale will occur promptly.

## VII.    The Proposed Procedures for Assumption and Assignment of the Contracts Satisfy the Requirements of Section 365

45.     Under the Bankruptcy Code, a debtor in possession may assume and assign an executory contract or unexpired lease subject to Court approval, if requirements of section 365(b) are satisfied.  See 11 U.S.C. § 365(b).  The determination of whether an executory contract or unexpired lease should be assumed is an administrative matter, subject to review by a bankruptcy court under a business judgment standard.  See In re Armstrong World Industries, Inc., 348 B.R. 136, 162 (D. Del. 2006) (noting that a debtor may assume an executory contract if "(i) outstanding defaults under the contract or lease have been cured under section 365(b)(1) of the Bankruptcy Code, and (ii) the debtor's decision to assume such executory contract or unexpired lease is supported by valid business justifications"); Sharon Steel Corp. v. National Fuel Gas Distrib. Corp., 872 F.2d 36, 40 (3d Cir. 1989) (noting that a decision to reject an executory contract is "measured under traditional 'business judgment test,' requiring only that trustee demonstrate that rejection will benefit the estate"); Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987) ("courts accord the debtor's business judgment a great amount of deference since the decision to assume or reject an executory contract is an administrative not a judicial matter").

28

46.    Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract.  See In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value fo the debtor's estate"); see also In re Headquarters Dodge, Inc., 13 F.3d 674, 682 (3d Cir. 1994) (noting purpose of section 365(f) is to assist the trustee in realizing the full value of the debtor's assets).

47.    Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract … only if the trustee assumes such contract … and adequate assurance of future performance is provided."  11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction."  In re DBSI, Inc., 405 B.R. 698, 708 (Bankr. D. Del. 2009); EBG Midtown S. Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992); see also In re Decora Indus., 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002) ("adequate assurance falls short of an absolute guaranty of payment").

48.    The Special Liquidators have determined that certain of the loan documents or other agreements relating to the Assets may constitute executory contracts under the Bankruptcy Code, and accordingly that the transfer of such Assets to the Successful Bidder may necessitate the assumption and assignment of such Contracts.  The Special Liquidators have further determined, in the exercise of their sound business judgment, that the assumption and assignment of the Contracts will benefit IBRC and its creditors.  Indeed, the assumption and assignment of the Contracts goes directly to the Sale of the Loan Assets to the Purchaser.  If the Contracts could not be assumed and assigned, then no transfer of the Loan Assets could be effectuated to any potential buyer.

49.      The Special Liquidators contemplate that the Successful Bidder will be able to provide adequate assurance of future performance in connection with any assigned executory contracts and leases, because such Successful Bidder must submit evidence sufficient to demonstrate its financial wherewithal and ability to consummate the Sale Transaction.

50.      IBRC also proposes to cure defaults and provide adequate assurance of future performance of the Contracts.  IBRC believes that no Cure Amounts are currently owed in connection with the assumption and assignment of the Contracts.  However, if any counterparty to a Contract disagrees, and this Court finds that there is an outstanding Cure Amount owed in connection with such Contract, then the payment of any such Cure Amount will be in final satisfaction of all obligations to cure defaults and compensate the non-debtor counterparties for any pecuniary losses under section 365(b)(1) of the Bankruptcy Code.

51.      At the hearing to approve the proposed sale, IBRC will provide evidence that illustrates the Successful Bidder's financial credibility, experience in the industry, and willingness and ability to perform under the Contracts (i.e., "adequate assurance of future performance").  The Sale Hearing will afford the Court and other interested parties the opportunity to evaluate the ability of the Successful Bidder to provide adequate assurance of future performance under the Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.  Therefore, IBRC requests that the Court find that the proposed procedures herein satisfy the requirements of section 365 of the Bankruptcy Code, and authorize and approve the assumption and assignment of the Contracts effective as of the closing of the Sale.

## NOTICE

52.      The Foreign Representatives propose to provide service by United States Postal Service first-class postage prepaid mail, within one (1) business day of the filing of this Motion,

upon: (i) the United States Trustee; (ii) all counterparties to the Loan Assets; (iii) all other known

parties located in the United States who claim interests in or liens upon the Assets; and (iv) all

parties who have requested notice in this Chapter 15 Case.  In light of the nature of the relief

requested herein, the Foreign Representatives submit that no other or further notice of this

Motion is necessary or required.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that the Court

grant the relief requested herein and grant such further relief as is appropriate.

Dated:  April 20, 2015
      Wilmington, Delaware

                                      SKADDEN, ARPS, SLATE, MEAGHER &
                                        FLOM LLP

                                       */s/ Van C. Durrer, II*
                                        Van C. Durrer, II (I.D. No. 3827)
                                        Annie Li
                                        300 South Grand Avenue
                                        Los Angeles, California 90071
                                        Telephone: (213) 687-5000

                                        *Attorneys for the Foreign Representatives*
                                        *of Irish Bank Resolution Corporation Limited*