**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                   :
In re:                                             :    Chapter 15
                                                   :
IRISH BANK RESOLUTION CORPORATION                  :    Case No. 13-12159 (CSS)
LIMITED (IN SPECIAL LIQUIDATION),                  :
                                                   :
Debtor in a foreign proceeding.                    :
                                                   :    **Hearing Date: Nov. 8, 2019 at 10:00 a.m. (EST)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x    **Obj. Deadline: Nov. 1, 2019 at 4:00 p.m. (EST)**

**FOREIGN REPRESENTATIVES' MOTION TO ESTABLISH APPLICABLE POST-
LIQUIDATION INTEREST RATE OF CERTAIN SUBORDINATED NOTES
PURSUANT TO 11 U.S.C. §§ 726(a)(5), 1507, AND 1521(a)**

Kieran Wallace and Eamonn Richardson, the duly appointed and authorized

foreign representatives (the "<u>Foreign Representatives</u>" or "<u>Special Liquidators</u>") of Irish Bank

Resolution Corporation Limited ("<u>IBRC</u>" or the "<u>Debtor</u>"), which is subject to a liquidation

proceeding in Ireland (the "<u>Irish Proceeding</u>"), by and through their undersigned counsel, hereby

file this motion (the "<u>Motion</u>"), pursuant to sections 726(a)(5), 1507, and 1521(a) of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>") in the above-captioned chapter 15 case (the

"<u>Chapter 15 Case</u>") for entry of an order (the "<u>Proposed Order</u>"), substantially in the form

attached hereto as <u>Exhibit A</u>, (a) applying section 726(a)(5) of the Bankruptcy Code to the

Chapter 15 Case for the purposes of this Motion, and (b) confirming that the federal judgment

rate of 0.15% is the applicable legal rate to calculate post-liquidation interest (the "<u>Post-

Liquidation Interest Rate</u>") for certain U.S. subordinated notes issued by IBRC's predecessor,

Anglo Irish Bank Corporation Limited ("<u>Anglo Irish</u>"), to certain U.S. creditors pursuant to the

Note Purchase Agreement dated as of September 28, 2005 (the "NPA"),[1] and (c) granting related relief.  In support of the Motion, the Foreign Representatives respectfully represent as follows:

## BACKGROUND

### I.       General Background

1.       IBRC is the successor of Anglo Irish and Irish Nationwide Building Society, two financial institutions which were both heavily exposed to the property market, primarily in Ireland.  Following the passage of the Irish Bank Resolution Corporation Act 2013 (the "IBRC Act"), on February 7, 2013 (the "Liquidation Date"), the Irish Minister for Finance (the "Finance Minister") issued a Special Liquidation Order placing IBRC into special liquidation (the "Irish Proceeding") and appointing the Foreign Representatives as IBRC's joint special liquidators.  In connection with the wind-down of IBRC and the recovery and administration of its assets globally, the Foreign Representatives commenced the Chapter 15 Case by filing their *Verified Petition Under Chapter 15 for Recognition of a Foreign Main Proceeding* [Docket No. 3], seeking recognition of the Irish Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code.  On December 18, 2013 this Court entered the Order Granting Recognition of Foreign Main Proceeding and Related Relief [ECF No. 187] (the "Recognition Order"), which was subsequently affirmed on appeal on August 4, 2015.  *In re Irish Bank Resolution Corp.*, 538 B.R. 692 (D. Del. 2015).

---

[1]    A copy of the NPA, which includes a form of Series A Subordinated Note as Exhibit A-1 and a form of Series B Subordinated Note as Exhibit A-2, is attached hereto as Exhibit B.  In compliance with applicable EU data privacy laws, IBRC will not release sensitive personal information regarding any current or former noteholder, including, but not limited to, telephone number, other notice or contact information, and bank account information.  Accordingly, Exhibit B does not include any of the other exhibits or schedules to the NPA.  IBRC may, at its discretion, provide certain exhibits, schedules, or ancillary documents to the NPA to Noteholder parties following execution by such Noteholder of a non-disclosure agreement in a form acceptable to IBRC.

II.      **The Subordinated Notes**

2.      Pursuant to the NPA, in 2005 Anglo Irish issued $165 million of Series A

Subordinated Notes due September 29, 2015 and $35 million of Series B Subordinated Notes

due September 29, 2017 (collectively, the "Notes").  NPA § 1.1.  The Notes are unsecured and

subordinated in right of payment to "Senior Creditors" (as defined in the NPA to mean "creditors

of [Anglo Irish] to the extent such creditors hold claims which are admitted to proof or submitted

in the bankruptcy or liquidation or winding up of [Anglo Irish] and who are not Subordinated

Creditors"[2]).  *See* NPA §§ 12.2, 10.1, Ex. A-1-2, Ex. A-2-2.

3.      The Notes were issued to eleven initial purchasers (the "Initial Noteholders").

*See* NPA at 41–45.  The original Notes were all transferred either directly or indirectly from the

Initial Noteholders to Credit Suisse Securities (USA) LLC ("Credit Suisse") on or before

September 29, 2010.  Subsequently, but sometime prior to the Liquidation Date, Credit Suisse

transferred its holdings of the Notes to new holders.  IBRC has maintained a register of

noteholders since February 13, 2013 and has confirmed the identity of all current noteholders

(the "Noteholders").  The majority of the Noteholders are U.S.-based entities, and at least one of

the Noteholders has previously appeared in this Chapter 15 Case.  *See* Notice of Entry of

Appearance and Demand for Notices and Papers [ECF No. 28] (filed by Noteholders Burlington

Alpha LLC and Burlington Beta LLC, collectively the "Burlington Noteholders").

4.      An "Event of Default" triggers the acceleration of "the unpaid principal amount of

all Notes, together with the interest accrued thereon."  *See* NPA § 11.1.  The term "Event of

---

[2]      In turn, "Subordinated Creditors" is defined to mean, "creditors of [Anglo Irish] to the extent such creditors
hold Subordinated Indebtedness," and "Subordinated Indebtedness means claims against [Anglo Irish]
(including, without limitation thereof, claims evidenced by the Notes) which are subordinated in the event of the
passing of an effective resolution or the making of an order, for the winding up of [Anglo Irish] to the claims of
all non-subordinated creditors of [Anglo Irish]."  NPA § 10.1.

Default" is defined in the NPA to mean "the making of an order by a court having jurisdiction in the premises or the due and valid passing of a shareholders' resolution, in either case for the winding up (other than under or in a connection with a scheme of amalgamation or reconstruction not involving bankruptcy or insolvency) of [Anglo Irish]." NPA § 11.1. In addition, other "Defaults" under the NPA include Anglo Irish's application for or consent to the appointment of a liquidator, commencement of a voluntary case under the Bankruptcy Code, or the commencement of an involuntary proceeding seeking the appointment of a liquidator. *See* NPA § 11.2(D) and (E). As a matter of Irish law, the Special Liquidation Order issued by the Finance Minister is to "have the same effect as if the Special Liquidation Order were the making of a winding up by the [High] Court [of Ireland]." *See* IBRC Act § 6(5); Declaration of Mark Traynor in Support of Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding [ECF No. 5] ¶ 9. Therefore, the commencement of the Irish Proceeding constituted an Event of Default which accelerated all payment obligations under the NPA.

5.      Pursuant to Section 1.3 of the NPA, beginning on December 29, 2010, the contractual rate of interest (the "Contract Rate") on the outstanding principal amount due on the Notes "and, to the extent permitted by applicable law, on any overdue interest" was "equal to the greater of (x) 5.71% . . . and (y) the prime commercial lending rate as announced from time to time by Citibank, N.A. at its principal office in New York City, plus 1%, until the obligation of the Company with respect to the payment thereof shall be discharged." IBRC has not made any payments on the Notes since December 29, 2012. *See, e.g.*, Verified Petition Under Chapter 15 for Recognition of a Foreign Proceeding [ECF No. 3] ¶ 14, n. 1. As of the Liquidation Date, $200,270,107.74 was due and owing on the Notes, including $200,000,000 in principal and $270,107.74 in accrued pre-liquidation interest.

6.      Both the NPA and the Notes are governed by New York law.  NPA § 19.7, Ex. A-1-2, Ex. A-2-2.  The NPA constitutes "a legal, valid and binding obligation of [Anglo Irish] enforceable against [Anglo Irish] in accordance with its terms, except as the enforceability thereof may be limited by (i) applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and (ii) general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law)."  NPA § 2.2.

### III.      Status of the Irish Proceeding

7.      During the approximately six years since this Court entered the Recognition Order, the Special Liquidators have undertaken a global marketing and sales process in order to liquidate the remaining assets of IBRC, located both within and outside of the United States, and to maximize recoveries for all of IBRC's creditors.  As of December 31, 2018, the Special Liquidators have overseen liquidations of portfolio and other assets generating approximately €17.1 billion in total gross revenue, including proceeds from the liquidation of United States assets.  In addition to having completed liquidations for nearly all of IBRC's assets, the Special Liquidators have also made significant progress in the claims review, reconciliation, and adjudication process.

8.      As reflected in the "Progress Update Report" dated May 22, 2019, a copy of which is attached hereto as Exhibit C, as of  December 31, 2018, approximately 3,224 claims have been received by the Special Liquidators, of which 2,632 (approximately 81.6%) have been formally adjudicated.  See Ex. C at 8.  Pursuant to Irish law, including the Companies Act of 2014, preferential creditors (within the meaning of 621 of the Companies Act 2014) have been admitted and paid in full.  The next category of creditors, secured creditors who had floating

charges over certain IBRC assets, have also been admitted and paid in full.  As of December 31, 2018, the Special Liquidators have made distributions to unsecured creditors holding admitted general unsecured claims representing 100% of such claims, and are in the process of adjudicating certain unsecured creditor claims.  *See* Ex. C at 8.  Preferential creditors, secured creditors, and unsecured creditors constitute "Senior Creditors" pursuant to the NPA.  The next category of claims in the priority scheme is subordinated claims, including the Notes.  Following satisfaction of subordinated claims in full, remaining funds will be remitted to the equityholders—here, the Irish government, which will ultimately inure to the benefit of Irish taxpayers.  *See generally* IBRC Act, Preamble (noting that the passage of the IBRC Act "is necessary in the public interest to ensure that the financial support provided by the State to IBRC is, to the extent achievable, recovered as fully and efficiently as possible.").

9.      The Special Liquidators currently anticipate that sufficient funds will be available to make distributions on account of all remaining unsecured and subordinated claims, including claims arising in connection with the Notes and including post-liquidation interest thereon, and that sufficient funds will also be available for distributions to equityholders.[3]

10.     As of the date of this Motion, 100% of the aggregate principal amount of the Notes remains outstanding and no distributions have been made on account of principal or any pre- or post-liquidation interest due on the Notes.  Accordingly, in a letter to Noteholders dated July 3, 2019 (the "July 3 Letter"), Eamonn Richardson, in his capacity as a Special Liquidator, requested that each Noteholder confirm their current ownership of the Notes and submit post-liquidation interest claims for review by the Special Liquidators.  Based on the Noteholders'

---

[3]    The Special Liquidators have established adequate reserves to satisfy any unpaid claims of "Senior Creditors" (as such term is defined in the NPA) which are found to be valid and properly admitted in the Irish Proceeding following the date of the entry of the Proposed Order.  The amount of such reserves is determined by the Special Liquidators in their business judgment.

responses to the July 3 Letter, it appears that the Special Liquidators and the Noteholders are in

agreement as to the respective outstanding principal and pre-liquidation interest holdings of each

Noteholder on account of the Notes.  However, the Noteholders' claims submissions indicate

that many, if not all, of the Noteholders have calculated accrued post-liquidation interest claims

using the Contract Rate, which ranges from 5.71% to 6.50% during the period from the

Liquidation Date to the date of this Motion, an assertion with which the Special Liquidators

disagree as it conflicts with precedent in this jurisdiction.[4]  *See, e.g.*, *In re Energy Future*

*Holdings Corp.*, 540 B.R. 109, 124 (Bankr. D. Del. 2015).

11.    Based on the amounts claimed by the Noteholders, the Special Liquidators have

calculated that accrued post-liquidation interest yields a total of approximately $70.52 million.

However, the Notes are governed by U.S. law (specifically, New York law).  NPA § 19.7, Ex. A-

1-2, Ex. A-2-2.  Under applicable U.S. law governing a liquidation (specifically, section

726(a)(5) of the Bankruptcy Code), post-petition interest is payable "at the legal rate" for any

allowed unsecured claims.  Using the federal judgment rate as of the Liquidation Date (0.15%)[5]

to calculate accrued post-liquidation interest, the Special Liquidators estimate that accrued post-

liquidation interest yields approximately $1.96 million across the Notes in the aggregate.  Given

the approximately $68.56 million difference between these figures, the Foreign Representatives

---

[4]    A submission from one of the Noteholders included alternative calculation scenarios for consideration by the Special Liquidators, but did not affirmatively assert that any one scenario be used over another, and reserved the Noteholder's rights to seek guidance with respect to such calculations, effectively conceding that the issue is not free from doubt.

[5]    Pursuant to 28 U.S.C. § 1961(a),  the federal judgment rate of interest is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding" the judgement date, here the Liquidation Date.  *See In re Wash. Mut., Inc.* 461 B.R. 200, 246 (Bankr. D. Del. 2011), *vacated in part on other grounds*, No. 08-12229 MFW, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012)  ("The caselaw is uniform in holding that it is the petition date at which the federal judgment rate is determined for purposes of awarding interest under section 726(a)(5).") (citations omitted).  According to the sources made available by the Board of Governors of the Federal Reserve System, the federal judgment rate effective on the Liquidation Date was 0.15%, as set forth in <u>Exhibit D</u> hereto.

require assistance from this Court pursuant to sections 1507 and 1521 of the Bankruptcy Code in order to resolve this dispute and then allow the Special Liquidators to proceed to the adjudication of the distributions due on account of the U.S. law governed Notes.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1410.

14.     The statutory predicates for the relief requested herein are sections 726(a)(5), 1507, and 1521(a) of the Bankruptcy Code.

## RELIEF REQUESTED

15.     By this Motion, the Foreign Representatives seek entry of the Proposed Order, which will, among other things, (a) apply section 726(a)(5) of the Bankruptcy Code to the Chapter 15 Case for the purposes of this Motion, (b) confirm that the federal judgment rate of 0.15% is the applicable "legal rate" to calculate post-liquidation interest on the Notes, and (c) grant related relief.

## BASIS FOR RELIEF

16.     The Foreign Representatives believe that it would be responsible to seek this Court's confirmation of the "legal rate" to serve as the Post-Liquidation Interest Rate for the U.S. law governed Notes, given the wide disparity among the rate claimed by many Noteholders, relative to the remaining Noteholders and the impact such calculation will have on other stakeholders.  The relief requested will likewise maximize the value of the IBRC estate and is in the best interests of IBRC's stakeholders as a whole.  Finally, the relief requested herein is expressly authorized by sections 726(a)(5) and 1507 of the Bankruptcy Code, and likewise

contemplated by both section 1521(a), of the Bankruptcy Code and the IBRC Act itself, which provides that "in the achievement of the winding up of IBRC the common good may require permanent or temporary interference with the rights, including property rights, of persons." *See* IBRC Act, Preamble.

17.     Pursuant to the Recognition Order, this Court has already recognized the Irish Proceeding as a foreign main proceeding.  Recognition Order ¶ 4.  Therefore, this Court is authorized to grant any relief appropriate to effectuate the purpose of chapter 15 and to protect the assets of IBRC or the interests of its creditors.  *See* 11 U.S.C. § 1521(a).  In addition, the Court is empowered "to provide additional assistance" to the Foreign Representatives under section 1507(a) of the Bankruptcy Code.  The Special Liquidators have a duty to determine the appropriate distribution of surplus funds out of the IBRC estate, and given that the NPA and Notes are governed by U.S. law, the Foreign Representatives, in their business judgment, are seeking guidance from this Court on the narrow issue of the appropriate Post-Liquidation Interest Rate.  Absent the relief requested herein, the Foreign Representatives would be unable to calculate the Noteholders' claims for post-liquidation interest on the IBRC liquidation estate, thereby impeding the Foreign Representatives' ability to fulfill their mandate to conduct an orderly winding up of IBRC in accordance with the IBRC Act and the instructions of the Finance Minister, and potentially exposing the IBRC estate to unnecessary litigation over the appropriate amount of the Noteholders' post-liquidation interest claims.  Therefore, the Proposed Order provides the Foreign Representatives with much-needed assistance.

## APPLICABLE AUTHORITY

I.     **Pursuant to Sections 1507 and 1521(a), Section 726(a)(5) of the Bankruptcy Code Should Be Applied to This Chapter 15 Case for Purposes of This Motion**

18.     Section 1507(a) of the Bankruptcy Code empowers this Court to grant "additional assistance" to the Foreign Representatives, subject to specific limitations set forth in chapter 15. *See* 11 U.S.C. § 1507(a). Similarly, section 1521(a) of the Bankruptcy Court empowers this Court, upon recognition of a foreign proceeding, to grant "any appropriate relief" to the Foreign Representatives "where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors." *See* 11 U.S.C. § 1521. As noted above, this Court has recognized the Irish Proceeding as a foreign main proceeding. *See* Recognition Order ¶ 4. Accordingly, sections 1507 and 1521(a) of the Bankruptcy Code are applicable to this Chapter 15 Case.

19.     In addition the Recognition Order acknowledges that "[t]he Foreign Representatives have reserved all rights to seek relief under section 1521 of the Bankruptcy Code, additional assistance under section 1507 of the Bankruptcy Code or any other relief otherwise available." *Id.* ¶ 5. The Recognition Order also specifically provides, "[t]he Foreign Representatives are granted leave to apply to this Court as necessary for additional relief under sections 1507 and 1521 of the Bankruptcy Code, or for any other relief otherwise available." *Id.* Indeed, the Special Liquidators have previously invoked sections 1507 and 1521 on multiple occasions to facilitate the administration of IBRC's assets located within the U.S., and the Bankruptcy Court expressly exercised jurisdiction over such requests under sections 1507 and

1521(a) of the Bankruptcy Code, including by applying sections 365 and 502(c) of the

Bankruptcy Code, which do not automatically apply to chapter 15 cases upon recognition.[6]

20.    The Foreign Representatives again seek assistance from this Court—specifically,

by applying section 726(a)(5) to this Chapter 15 Case, to provide guidance to the Special

Liquidators on the interest rate to be applied in the process of calculating post-liquidation interest

payable on the Notes.  Such assistance will allow the Foreign Representatives to expeditiously

resolve claims based on the Notes, the majority of which are held by U.S. creditors, in

accordance with such creditors' contractual expectations, while also avoiding inconvenience to

local creditors, undue impediment to the progress of this Chapter 15 Case and the orderly

liquidation and distribution of IBRC's assets.  The grant of such assistance is both permissible

under, and consistent with, sections 1507 and 1521 of the Bankruptcy Code in this instance—

where sophisticated creditors have asserted claims arising under obligations governed by U.S.

law, on account of which no proceedings have been brought by either the Noteholders or IBRC

in Ireland, and on which U.S. law provides a clear answer.  *Cf.* Hr'g Tr. (Aug. 28, 2018) [ECF

No. 650] ("[W]hen you do business, especially a sophisticated, moderately-successful

businessman does business in a foreign jurisdiction, you are putting yourself susceptible to the

laws of that foreign jurisdiction, to resolve the dispute that may arise in connection with that

business.").

---

[6]    *See, e.g.*, Foreign Representatives' Motion Pursuant to Bankruptcy Code Sections 105, 363, 365, 502, 1520, and 1521 and Bankruptcy Rules 2002, 6004 and 6006 (I) Approving the Sale of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (II) Approving the Form and Manner of Sale Notice, (III) Applying Sections 365 and 502(c) of the Bankruptcy Code for Purposes of This Motion, (IV) Approving the Assumption and Assignment of Certain Executory Contracts and the Form and Manner of Notice Thereof, and (V) Granting Related Relief [ECF No. 204] and Order overruling objections to and granting motion [ECF No. 253] ¶ C (including findings of fact that the relief granted "is necessary and appropriate and in the interests of the public and international comity, consistent with the public policy of the United States, warranted pursuant to section 1507 of the Bankruptcy Code, and will not cause hardship of any party in interest that is not outweighed by the benefits of the relief granted herein.").

II.     **The Requested Relief Allows the Foreign Representatives to Calculate the Post-Liquidation Interest Payable on the Notes Substantially in Accordance with Section 726 of The Bankruptcy Code**

21.     The NPA and Notes are governed by U.S. law, and specifically contemplate that the enforceability of the obligations thereunder may be limited.  In response to the July 3 Letter, many Noteholders' claims submissions demanded post-liquidation interest at the Contract Rate, without regard to applicable U.S. federal law, including section 726(a)(5) of the Bankruptcy Code, which provides that, when a liquidating debtor is solvent, post-liquidation interest is payable at the "legal rate."  *See* 11 U.S.C. 726(a)(5).  Accordingly, the Foreign Representatives seek additional assistance from this Court under section 1507(a) of the Bankruptcy Code to determine the appropriate Post-Liquidation Interest Rate payable to the Noteholders given that IBRC will produce a surplus and is accordingly solvent for purposes of section 726 of the Bankruptcy Code.

22.     In evaluating relief under section 1507, the Bankruptcy Court must consider whether the proposed assistance will satisfy five factors.  *See* 11 U.S.C. § 1507(b)(1)–(5).  First, the assistance must assure the "just treatment of all holders of claims against or interests in the debtor's property."  11 U.S.C. § 1507(b)(1).  The existing caselaw interpreting the subsections of section 1507(b), confirms that many of the factors that the Bankruptcy Court already analyzed in the context of recognition would serve to satisfy this consideration.  *See, e.g.*, *In re Oi S.A.*, 587 B.R. 253 (Bankr. S.D.N.Y. 2019 (granting motion to enforce Brazilian restructuring plan under sections 1507 and 1521).  Here, there is a direct conflict between the treatment of "holders of claims" (here, the Noteholders) and the "holders . . . of interests" (remaining stakeholders who may be entitled to receive distributions or surplus from the IBRC estate) relative to the calculation of post-liquidation interest.  Arguably, the same tension exists in any case where creditors stand to benefit from the application of a contractual rate of interest that is higher than

12

the "legal rate" mandated by section 726(a)(5) of the Bankruptcy Code, resulting in a depletion

of the funds available for distribution from a debtor's estate.  Therefore, it appears that the *only*

way to afford "just treatment" is to seek a Bankruptcy Court determination on the issue.  *See*

*generally In re Energy Future Holdings Corp.*, 540 B.R. at 124 (holding that, for purposes of

plan confirmation, the Bankruptcy Court has discretion to award postpetition interest to

unsecured creditors for purposes of chapter 11 plan confirmation "at an appropriate rate if it

determines to do so under its equitable power.").

23.     The second consideration requires the protection of "claim holders in the United

States against prejudice and inconvenience."  11 U.S.C. § 1507(b)(2).  Obviously, seeking a

determination from this Court in the U.S. regarding the interest rate to be applied in the process

of calculating post-liquidation interest payable to Noteholders under U.S. law governed

obligations maximizes the convenience of Noteholders, the majority of whom are U.S. creditors.

In considering whether the Noteholders would be protected against "prejudice" by such a

determination, it is relevant to consider the reasonable expectations of the Noteholders, who

agreed that U.S. law—including the Bankruptcy Code—should govern their rights to payment as

Noteholders, when U.S. law provides a clear answer in this case.  Clearly, the Noteholders are

not "prejudiced" in this respect.

24.     The third relevant[7] consideration is not only satisfied, it also enhances the

jurisdictional basis for the relief sought.  Specifically, this factor requires the Court to consider

whether the additional assistance requested by the foreign representative assures the "distribution

of proceeds of the debtor's property substantially in accordance with the order prescribed by this

---

[7]     The other considerations required by section 1507(b) of the Bankruptcy Code are not applicable here
(prevention of improper dispositions of property and provision of a fresh start for an individual debtor).  11
U.S.C. §§ 1507(b)(3) and (5).

title." 11 U.S.C. § 1507(b)(4). Section 726 is the very statute that prescribes the order of

distribution provided by "this title," and the proposed assistance of the Court is ultimately

designed to facilitate the Special Liquidators—who have a duty to distribute the surplus of

IBRC's estate—in calculating that distribution, once they have obtained guidance from the Court

on the appropriate post-liquidation interest rate payable on the Notes.

25.      Section 1507 of the Bankruptcy Code also requires that the requested assistance

"be consistent with the principles of comity." *See* 11 U.S.C. § 1507(b). Comity is "the

recognition which one nation allows within its territory to the legislative, executive or judicial

acts of another nation, having due regard both to international duty and convenience, and to the

rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v.*

*Guyot*, 159 U.S. 113, 163-64 (1895). The party urging comity must bear the burden of proof that

granting comity is appropriate. *See In re Sivec SRL*, 476 B.R. 310 (Bankr. E.D. Okla. 2012)

(refusing to grant comity where interests of creditors were unprotected under foreign insolvency

law). Although the relief granted in a foreign proceeding and relief available in the United States

do not need to be identical, "[t]he principle of comity has never meant categorical deference to

foreign proceedings. It is implicit in the concept that deference should be withheld where

appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the

United States." *See In re Treco*, 240 F.3d 148, 157 (2d. Cir. 2001) (collecting cases); *In re Rede*

*Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (same); *In re Elpida Memory, Inc.*, 2012

WL 6090194, at *8 (same); *In re Elpida Memory, Inc.*, 2012 WL 6090194, at *4 (Bankr. D. Del.

Nov. 20, 2012) (declining to extend comity to foreign orders approving transactions of foreign

debtor and requiring that foreign representatives instead meet the applicable standards governing

the sale of assets under section 363 of the Bankruptcy Code).

26.     Comity can be applied in one of two ways.  *See In re Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 100–01 (2d Cir. 2019) (citing *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1047 (2d. Cir. 1996).  Neither application is warranted in this specific instance.  The first is "prescriptive comity," which asks whether a court should presume that Congress intended to limit the application of domestic law on a particular set of facts out of respect for foreign sovereigns.  *Id.*  In answering the question, a court must determine whether "there is a true conflict between American law and that of a foreign jurisdiction."  *Id.* at 102 (citing *In re Maxwell*, 93 F.3d at 1049).  "A true conflict exists if compliance with the regulatory laws of both countries would be impossible," for instance where it would be "impossible to distribute the debtor's assets in a manner consistent with both rules." *Id.* (citations omitted).

27.     Section 726(a)(5) of the Bankruptcy Code specifically mandates that unsecured creditors receive distributions "in payment of interest at the legal rate" on account of unsecured claims paid in a the liquidation proceedings of a solvent debtor.  *See* 11 U.S.C. § 726(a)(5); *see also In re Dow Corning Corp.*, 237 B.R. 380, 395 (Bankr. E.D. Mich. 1999) ("[I]t is clear from § 726(a)(5) that payment of interest is no longer a matter of discretion; it is mandatory when estate proceeds are sufficient.").  Irish bankruptcy law mandates a similar scheme.  *See* Bankruptcy Act 1988 § 86 ("If the estate of any bankrupt is sufficient to pay one euro in the euro, with interest at the rate currently payable on judgment debts, and to leave a surplus the Court shall order such surplus to be paid or delivered to or vested in the bankrupt, his personal representatives or assigns.").  Irish case law suggests that, in the case of a company that is winding up, the company is "solvent" if a surplus remains and, therefore, the relevant provision to apply is section 242 of the Companies Act 1963 (as amended).  *See In the Matter of Hibernian Transp.*

15

Cos. Ltd. (Judgment of May 13, 1993) (Ir.), a copy of which is attached hereto as <u>Exhibit E</u>.  The

Companies Act 1963 was replaced with the Companies Act 2014, which sought, in part, to

reduce "the court's supervisory role in favour of greater involvement for creditors"[8] in the

liquidation process.  In addition, section 242 of the Companies Act 1963 is amended by both the

IBRC Act and the Companies Act 2014 such that "[t]he functions of adjustment of rights of

contributories and distribution of any surplus have been transferred from the court to the

liquidator,"[9] subject always to a creditor's right to bring the matter of a liquidator's adjudication

before the High Court in Ireland.  Thus, given that the adjudication and administration of

distributing the surplus out of IBRC's estate is in the hands of the Special Liquidators—and

particularly in light of the fact that the NPA and Notes are governed by U.S. law—the Foreign

Representatives are, in the exercise of their business judgment, seeking guidance from this Court

on the narrow issue of the applicable Post-Liquidation Interest Rate.

28.    Even assuming that a true conflict does exist, there is strong support for the

Bankruptcy Court to withhold deference to any potentially applicable Irish law in order to avoid

violating the congressionally mandated payment to which Noteholders may be entitled.  *See In re*

*Pub. Access Technology.Com, Inc.*, 307 B.R. 500 (E.D. Va. 2004) (holding that decision to

address chapter 7 trustee's preference avoidance claims against insider of corporate debtor, and

not to defer to Canadian court where insider's bankruptcy proceedings were pending, was not

abuse of discretion where bankruptcy court's decision merely determined amount of claim,

which would still have to be administered by Canadian court, and would assist—rather than

impede—Canadian bankruptcy court in deciding ultimate disposition of insider's assets).

---

[8]    *See* Gov't of Ir., Preliminary Note & Explanatory Memorandum on Companies Bill 2012 at 230–31 (Dec. 13, 2012), https://data.oireachtas.ie/ie/oireachtas/bill/2012/116/eng/memo/b11612d-memo.pdf

[9]    *Id.* at 248.

29.     The second application is "adjudicative comity," which asks whether a court should abstain from exercising jurisdiction over application of a statute in "deference to a foreign nation's courts that might be a more appropriate forum for adjudicating the matter." *Id.* at 101–02.  Here, there is no Irish Proceeding before an Irish court to determine the calculation of post-liquidation interest due to the Noteholders.  Moreover, as discussed above, Irish law has specifically removed the adjudicative and administrative burden of distributing a surplus from the Irish courts and transferred that primary role to the Special Liquidators, without limiting the right of creditors to bring disputes over claims before the High Court in Ireland.[10]  Given that fact and the situs of the NPA and Notes within the U.S., the Bankruptcy Court is the appropriate forum for the resolution of the Post-Liquidation Interest Rate dispute.  *See In re Elpida Memory, Inc.*, 2012 WL 6090194, at *7 ("Importantly, following the recognition of a foreign main proceeding, the Model Law expressly imposes the laws of the ancillary forum—not those of the foreign main proceeding—on the debtor with respect to transfers of assets located in such ancillary jurisdiction."); *In re Berau Capital Res Pte Ltd.*, 540 B.R. 80, 83 (Bankr. S.D.N.Y. 2015) ("It would be ironic if a foreign debtor's creditors could sue to enforce the debt in New York, but in the event of a foreign insolvency proceeding, the foreign representative could not file and obtain protection under chapter 15 from a New York bankruptcy court.").

30.     Likewise, where parties to a contract select New York law as governing law, a bankruptcy court "must abjure a conflicts analysis or consider foreign law or foreign public policy, and must instead apply New York substantive law.  *See In re SunEdison, Inc.*, 577 B.R. 120, 128 (Bankr. S.D.N.Y. 2017) (citing *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 612 (2012) for the principle that "express contract language excluding New York's

---

[10]     As discussed above, as of the date of this Motion, there are no such suits pending before any court in Ireland.

conflict-of-law principles is not necessary.").  Absent a federal statute dictating otherwise, a

Bankruptcy Court would normally interpret the provisions of the NPA and the Notes according

to substantive New York law.  *See* U.S. Const. Art. VI, Cl. 2; *Butner v. United States*, 440 U.S.

48, 55 (1979) ("Property interests are created and defined by state law [u]nless some federal

interest requires a different result . . .").  However, Congress has made it clear that section

726(a)(5) expressly dictates otherwise.  *See In re Energy Future Holdings Corp.*, 540 B.R. at 114

("[T]he payment of post-judgment interest is procedural by nature and dictated by federal law

rather than state law, further supporting the use of the federal judgment rate.") (citing cases); *In*

*re Dow Corning Corp.*, 237 B.R. at 408 ("Bankruptcy law is federal law . . . From this it follows

that the computation of post-petition interest in bankruptcy cases must be determined by

reference to federal law, which of course means a federal statute.  And this has long been the

rule.") (citations omitted).

       31.    Furthermore, this Court's determination of the Post-Liquidation Interest Rate is

consistent with the legislative history of chapter 15.  Section 1507(a) "was added to the

Bankruptcy Code because Congress recognized that chapter 15 may not anticipate all of the

types of relief that a foreign representative may require and which would otherwise be available

to such foreign representative."  8 Collier on Bankruptcy ¶ 1507.01 (16th 2019) (citing H.R.

Rep. No. 109-31, 109th Cong., 1st Sess. 109 (2005)).  The Foreign Representatives seek relief

under section 1507 of the Bankruptcy Code that ultimately assures the distribution of Debtor

property in accordance with the order prescribed by the Bankruptcy Code in order to resolve a

dispute with U.S. creditors that is directly within the purview of this Court.  "[T]he use of the

federal judgment rate promotes two important bankruptcy goals: fairness among creditors and

administrative efficiency."  *See In re Energy Future Holdings Corp.*, 540 B.R. at 114 (internal

citation omitted). "Thus, principles of comity either do not apply or must defer to the plain

meaning and legislative history." *See In re Elpida Memory, Inc.*, 2012 WL 6090194, at *9

(denying deference).[11]

### III. Granting the Relief Requested By The Foreign Representatives Is Also Warranted Under Section 1521(a)(5) and (7)

32.    The Foreign Representatives seek relief that will permit them to administer

Debtor property within the territorial jurisdiction of the U.S. *See In re Berau Capital Res Pte*

*Ltd.*, 540 B.R. at 83 (holding that indenture to which foreign debtor issued U.S. dollar

denominated debt governed by New York law was property of the foreign debtor satisfying the

section 109(a) eligibility requirement). Precedent supports granting a foreign representative

assistance in the context of distributions. *See In re Rede Energia S.A.*, 515 B.R. 69. In *Rede*

*Energia*, the foreign representative of debtors that were the subject of reorganization cases

pending in Brazil, which had been recognized as foreign main proceedings, sought relief from

the bankruptcy court to aid the enforcement of the Brazilian court's order confirming the

debtors' reorganization plan, including an order authorizing and directing the indenture trustee to

make payments to the debtors' noteholders in accordance with the Brazilian reorganization plan.

*Id.* at 88. The foreign representative sought the specific authority and directive in order to

provide assurance to the indenture trustee that the requisite action under the Brazilian plan was

permissible. *Id.* The court held that, under both sections 1507 and 1521(a) of the Bankruptcy

Code, the foreign representative's request to enforce Brazilian plan of reorganization was proper

---

[11]    In addition, the Practice Guide provides that "[d]eferring to another court might not be possible in all cases, as courts are often obliged to exercise jurisdiction or exclusive control over certain matters," and that "the insolvency representative may have discretion to simply not pursue a given action in its home court, electing to let the representative of a related proceeding in another State pursue the action there." Practice Guide ¶ 20. Moreover, "[o]ne court might defer to the jurisdiction of another court where, for example, a particular action may be possible in the second court but not in the first." Practice Guide ¶ 19.

because it "is a relief of a type that courts have previously granted under section 304 of the
Bankruptcy Code and other applicable U.S. law" and the request to include specific direction to
indenture trustee regarding distributions to noteholders under an indenture and notes governed by
New York law "is also relief of a type available under U.S. law"—namely, section 1142(b) of
the Bankruptcy Code.  *See id.* at 91–95.

33.     The Foreign Representatives, through this Motion, seek similar assurances with
respect to the rate of post-liquidation interest payable on the Notes, ultimately facilitating
distributions over which they have been entrusted to make to Noteholders.  As the court held in
*Rede Energia*, such relief would be proper under both sections 1507 and 1521 of the Bankruptcy
Code.  *See id.* at 93–95; *see also In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 650
(Bankr. S.D.N.Y. 2016) (granting recognition to Argentinian restructuring proceeding and
including, as "appropriate relief" under section 1521(a), an order directing the indenture trustee
of New York law governed notes to carry out actions necessary to consummate the Argentinian
restructuring).

34.     Entrusting the administration of the NPA and Notes to the Foreign
Representatives in accordance with U.S. law is appropriate relief under section 1521(a)(5) of the
Bankruptcy Code.  *See* Findings of Fact and Conclusions of Law [ECF No. 307] (the "<u>Findings</u>
<u>of Fact</u>") ¶ 57 ("[M]any of the duties of the Special Liquidators are administrative in nature.  For
example, the Special Liquidators are charged with . . . reconciling claims, distributing proceeds
from asset dispositions . . . [and] have a duty to maximize value of IBRC's assets for the benefit
of all creditors."); *see also* Order Entrusting Distribution of Assets to Foreign Representatives
[ECF No. 602] (the "<u>Distribution Order</u>") ¶¶ 2, 5 (entrusting the administration and realization of
the proceeds of asset sales conducted within the territorial jurisdiction of the United States to the

Foreign Representatives and superseding prior order approving prior stipulation with the Burlington Noteholders regarding such proceeds). Thus, relief is appropriate under section 1521(a)(5) of the Bankruptcy Code.

35. Remarkably, when the Foreign Representatives sought entry of the Distribution Order, it was far from clear as to whether any dividend at all would be payable on account of unsecured subordinated claims, like those asserted by the Noteholders on account of the Notes, let alone on account of post-liquidation interest on such claims. *See* Foreign Representatives' Motion to Entrust Distribution of Assets to Foreign Representatives [ECF No. 596] ("Distribution Motion") ¶ 11 (quoting letters sent to the Burlington Noteholders on December 5, 2016); *compare* Distribution Motion ¶¶ 2–5 (describing the status of the Irish Proceeding as of approximately April 14, 2017), *with* ¶¶ 6-8 of this Motion (describing the status of the Irish Proceeding as of approximately the date hereof). The success of the liquidation itself has led to an interesting conundrum that presents an impediment to the prompt calculation of claims and ultimate distribution of recoveries to creditors. In this narrow instance, the application of U.S. law in accordance with the contractual expectations of IBRC and the Noteholders is necessary to effectuate the purposes of chapter 15, which include "greater legal certainty for trade and investment." *See* 11 U.S.C. §§ 1501(a)(2), 1521(a).

36. Determination of the Post-Liquidation Interest Rate under section 726(a)(5) of the Bankruptcy Code is precisely the type of relief that would be available to a chapter 7 trustee charged with liquidating assets and making distributions of estate property "as expeditiously as is compatible with the best interests of parties in interests." *See* 11 U.S.C. § 704(a)(1). In addition, such a determination necessarily either protects assets of the Debtor (*e.g.*, if the federal judgment

rate applies) *or* protects the interests of creditors (*e.g.*, the Noteholders, if the Contract Rate applies).  Thus, relief is also appropriate under section 1521(a)(7) of the Bankruptcy Code.

## NOTICE

37.     The Foreign Representatives propose to provide service by United States Postal Service first-class postage prepaid mail, within (1) business day of the filing of this Motion, upon (i) the United States Trustee; (ii) all parties who have requested notice, and (iii) the Noteholders' and their counsel.  In light of the nature of the relief requested herein, the Foreign Representatives submit that no other or further notice of this Motion is necessary or required.

## NO PRIOR REQUEST

38.     No prior request for the relief sought in this Motion has been made to this or any other court.


*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth herein, the Foreign Representatives respectfully request that the Court enter the Proposed Order, and grant any such other and further relief as this Court deems just and proper.

Dated: October 18, 2019
      Wilmington, Delaware

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP


*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
300 South Grand Avenue
Los Angeles, California 90071
Telephone: (213) 687-5000

*Attorney for the Foreign Representatives*
*of Irish Bank Resolution Corporation Limited*